**THOMPSON, Admr., Plaintiff-Appellant, v PARRETT, et Defendants-Appellees.**

Ohio Appeals, Second District, Franklin County.

No. 4104. Decided March 1, 1948.

Francis M. Thompson, Columbus, for plaintiff-appellant.
Vorys, Sater, Seymour & Pease, Byron E. Ford of Counsel, Columbus, for The National Casualty Co., defendant-appellee.
James M. Hengst, Columbus, for The Fidelity & Deposit Co. of Maryland, defendant-appellee.

## OPINION

By THE COURT.

This is an appeal on law from the judgment of the Probate Court of Franklin County, Ohio, in an action to determine heirship. The action was instituted October 14, 1946, by Francis M. Thompson, Administrator of the Estate of

Gordon J. Parrett who claims that his presumed decedent disappeared May 19, 1936, and has not reappeared. The plaintiff asks the Court to fix the true date of death, or presumed death of his decedent, the priority of claims of defendants and otherwise determine the heirship and distributive rights of all the parties herein. The Probate Court found that the decedent died by committing suicide on the date of his disappearance and based his finding on a statement of the decedent made to his aunt on the day before his disappearance. Mrs. Electa Parrett Maxwell, the aunt of decedent, testified as follows:

"Q. When did you last see Gordon J. Parrett? A. I saw him on Monday before he left, I think he left on Tuesday, I have it fixed in my mind he left on Tuesday, but he was at our house on Monday that same week.

Q. If he left May 19th, then it was on May 18th you saw him last? A. Yes.

Q. Did he make any remarks that would indicate what his future was going to be? A. Well, he and I talked quite a while, we sat down and visited. He said, 'You know what I did this morning?' Well, he was sort of jolly-like, I said, 'Well, hard to tell, Gordon, what you did, you do so many things.' He said, 'I put everything in the Lord's hands this morning, I put my mother and my house and my flowers and my work, I put it all in the Lord's hands this morning'. I didn't ask him—I just let it go at that—why he did it."

The trial court stated in its opinion:

"The court can draw a fair deduction from the language which he used that he intended to end his life within a short time. We think this circumstance alone is sufficient to justify the court in holding that his death occurred at or near the date of his disappearance."

The appellant claims that the judgment of the trial court is against the weight of the evidence and contrary to law and the legal presumptions.

We give due recognition to the rule that a reviewing court may not disturb the judgment of the trial court on the weight of the evidence simply because the evidence is conflicting or because it may have arrived at a different conclusion if it had been sitting as the trial court. Before a reviewing court will be warranted in reversing the judgment of the trial court

it must find such judgment to be against the manifest weight of the evidence. **17 O. Jur. 383.** The statement made by Parrett to his aunt, taken by itself, in our opinion, does not support the conclusion that he committed suicide. This statement must be interpreted and considered in the light of all the evidence.

The evidence shows that Parrett was thirty-five years of age, unmarried, gainfully employed, in good health, and resided with his mother and two brothers at the time of his disappearance. He was deeply religious and made many weekend trips to other cities where he engaged in religious activities. He had a yearning to become a missionary and at one time stated that he intended to go into religious work. He was not a religious fanatic but had a strong desire to practice his religion. A few days before leaving he worked over time to get all the garden made. On the day before he left he stated he received a telephone call which apparently had something to do with his leaving. When he left his brother walked with him to the car and observed nothing unusual about him. A neighbor who sells newspapers and magazines at the Union Station saw him sitting in a coach on the Pennsylvania Railroad bound for Richmond, Indiana, a place he frequently visited. The witness engaged him in conversation and observed nothing unusual about him. When he left he was dressed for traveling. The evidence shows there were some things about his home life which irritated and disturbed him.

From the facts a conclusion may reasonably be drawn that he intended to leave and not return. The statement he made to his aunt supports this conclusion. The statement was couched in words that would be used by a spiritually minded person. We cannot deduce from this statement, taken together with all the other evidence, that he intended to take his life. Such a conclusion would be based purely on speculation. His conduct does not support the conclusion that this was his intention. The Court recognizes a presumption in favor of a man's love of life and against suicide or self-destruction. I Jones on Evidence, 4th Ed. Vol. 1, p. 107. Trained in the teachings of the Christian religion, as he was, he surely was conversant with the religious doctrine that the soul of a man who takes his own life is forever damned. There is little or no likelihood that a person with pronounced religious convictions will take his own life.

Under the Ohio law unexplained absence for seven years raises a presumption of the fact of death. The law raises no presumption as to the precise time of death. The pre-

20

sumption is, in absence of definite evidence to the contrary, that such person is dead at the end of seven years. **13 O. Jur. 372;** I Jones on Evidence, 4th Ed. Vol. 1, p. 112; Davie v. Briggs, 97 U. S. 628. The presumption of death does not relate back to the date of disappearance in the absence of evidence on the subject. 16 Am. Jur. 30, Sec. 35; Jones on Evidence, 4th Ed., Vol. 1. p. 112.

He who asserts that the time of death was on a day prior to the expiration of seven years from the date of his absence carries the burden of proof. To raise a presumption of death at a date within the seven years, special facts and circumstances should be shown reasonably supporting such conclusion. **13 O. Jur. 372;** 16 Am. Jur. p. 30, Sec. 35; 25 C. J. S. 1064; I Jones on Evidence, 4th Ed. Vol. 1, p. 112; **Young v Young, 10 Oh Ap 351,** (motion to certify overruled); Davie v Briggs, supra. The case of **Prudential Insurance Company of America v Phillips, 20 Abs. 228,** has been cited by appellees in support of the proposition that it is the duty of the trial court to fix the date of death where there is a presumed death after seven years absence. The facts in the instant case are clearly distinguishable from the facts in the Phillips case. In that case there was evidence which strongly supported the inference that death had occurred by drowning at or near the date of disappearance. The facts in the instant case do not show any definite time of death. In this respect this case is similar to Young v Young, supra, wherein the Court on page 353 held:

"Any conclusion reached is mere conjecture, as the record does not contain any testimony which would justify the finding that Wheeler J. Young was either actually dead or alive on March 4, 1900, the date of the death of his father. This case must, therefore, be determined upon legal presumptions."

In the case at bar, the evidence being insufficient to warrant a finding that the decedent died on a date prior to the expiration of seven years, we are required to rest the case upon the legal presumption that the death of Gordon J. Parrett did not arise until the expiration of seven years from the date of his disappearance. Since presumption of death did not arise until May 19, 1943, his mother and brother predeceased him. His interest in said real estate should descend and distribution of said estate and an order respecting priority of claims of defendants should be made accordingly.

The appellant has assigned as error that the judgment is against the manifest weight of the evidence and contrary to law. In our opinion, the judgment is not only against the

manifest weight of the evidence, but we do not find evidence of any probative value to sustain the judgment. For these reasons, we find the judgment of the Probate Court is contrary to law and should be reversed. Entry may be presented, reversing the judgment of the Probate Court, and entering judgment in conformity to this opinion.

Judgment accordingly.

WISEMAN, P. J., MILLER and HORNBECK, JJ., concur.