EDWARDS ET AL., APPELLEES, *v.* STRINGER, ADMR., APPELLANT;
KELLY LABOR OF CINCINNATI, INC.

(No. C-77066—Decided April 12, 1978.)

*Messrs. Rosen & Rosen,* for appellees.
*Mr. John J. Nolan,* for appellant.

BLACK, J.   The single question raised on this appeal
is whether an employee who lost his life while hosing down
a barge on the Ohio River, under the employment circum-
stances found in this case, has a claim which falls within
the jurisdiction of the Ohio Bureau of Workers' Compen-
sation.

The Administrator of the Bureau of Workers' Com-
pensation held that the claim was beyond its jurisdiction
because the death occurred on the navigable waters of the
United States. This conclusion was reversed by the Court
of Common Pleas, and the decedent's survivor was held to
be entitled to participate in the Workers' Compensation
Fund as provided by law. We affirm the court's decision.

The appeal was submitted to the trial court and to

us on stipulated facts. James Edwards (the decedent) was employed by a supplier of temporary labor (not an employment agency) which paid all taxes, premiums and contributions with respect to his employment, including contributions to the Ohio Workers' Compensation Fund. This employer did not, by stipulation, engage in maritime work or employment. On January 5, 1966, Edwards was sent to work for a dry dock company and a marine service company at dry dock facilities on the Ohio River at Ludlow, Kentucky, where unbeknownst to his employer, he was assigned to assist in cleaning (hosing down) a barge. He accidentally fell into the river. Attempts to rescue him were futile, and his body was never found. No claim was made until 1973, after the seven-year period had expired.[1] The precipitating event clearly occurred on the navigable waters of the United States.

We hold that the Bureau has jurisdiction over this claim because the Ohio compensation act does not exclude accidents on the navigable waters and because under the employment circumstances stipulated in this case, Ohio's jurisdiction is not preempted or prevented by federal law.

We find nothing in the Ohio Workers' Compensation Act which states that an accidental injury or death incurred on the navigable waters of the United States is excluded from coverage thereunder. Therefore, the state compensation board has jurisdiction unless a death on navigable

---

[1] The presumption of death after an unexplained absence of seven years, being in the nature of a procedural device facilitating the determination of the fact of death itself, does not fix the precise day of death. *Thompson* v. *Parrett* (1948), 82 Ohio App. 366, holds that in the absence of evidence to the contrary, the presumption is that the person died at the end of the seven-year period. In the instant case, the parties stipulated that the death was at the end of the period, and despite the improbability that Edwards swam in the river for seven years before dying, we are not inclined to disturb that agreed fact. The 1973 date is significant because it focuses attention on the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, Title 33, U. S. Code, Section 901 *et seq.*

While the stipulation reads that his date of death was January 3, 1973, we deem the correct date to be January 5, 1973, seven years after his disappearance.

waters under the circumstances of this case falls exclusive-
ly within federal jurisdiction.

*Southern Pacific Co.* v. *Jensen* (1917), 244 U. S. 205,
held that a state compensation law could not constitution-
ally extend beyond the water's edge of navigable waters,
thus creating what was essentially a "situs" test of eligi-
bility for state compensation. Prior to the 1972 amend-
ments to the Longshoremen's and Harbor Workers' Com-
pensation Act (LHWCA), Title 33, U. S. Code, Section 901
*et seq.*, the courts used the water's edge (*Jensen* line) as
one component of the test of eligibility for federal com-
pensation. If the work-related injury occurred on navigable
waters and if the employer had "any" employee in mari-
time employment, then the worker was eligible for com-
pensation under LHWCA.[2] *Pennsylvania R. R. Co.* v.
*O'Rourke* (1953), 344 U. S. 334, 340-342.

But federal jurisdiction was not exclusive in all cases,
and the Supreme Court has permitted recovery under state
remedies for some injuries that occurred on navigable
waters. In *Davis* v. *Dept. of Labor* (1942), 317 U. S. 249,
the state of Washington was held to have jurisdiction over
a claim arising from the death of a worker on a barge in
navigable waters who was assisting in the dismantling of
a bridge. At page 256, the court set forth the concept of a
"twilight zone" between exclusive federal jurisdiction
and exclusive state jurisdiction, in the following words:

"There is, in the light of the cases referred to, clearly
a twilight zone in which the employees must have their
rights determined case by case, and in which particular
facts and circumstances are vital elements. That zone in-
cludes persons such as the decedent who are, as a matter

---

[2]The following employees were, and still are, statutorily excluded
from LHWCA coverage: a master or member of a crew of any vessel;
any person engaged to load or unload or repair any small vessel under
eighteen tons net; or an employee of the United States.

The stipulated facts do not reveal the net tonnage of the barge from
which Edwards fell. If it was under 18 tons, LHWCA would not apply
and all questions of jurisdiction would have been resolved in favor of
state coverage. But we cannot rest our decision on this bottom.

of actual administration, in fact protected under the state compensation act."

The twilight zone created concurrent federal and state jurisdiction so that the claim could be adjudicated in either jurisdiction. See Gilmore and Black, The Law of Admiralty 420, Section 6-49 (2d ed, 1975). Note, *The 1972 Amendments to Section 903 of the Longshoremen's and Harbor Workers' Act: Has the "Twilight Zone" Moved Onto the Pier?* 4 Rutgers-Camden L. J. 404 (1973). The twilight zone was not expressly changed or abrogated by 1972 amendments to LHWCA, and it is considered by the cited authors merely to have been moved shoreward.[a] Edwards' employment was shore-based as was that of Davis, and he was, "as a matter of actual administration, in fact protected under the state compensation act." His death fell in the twilight zone, and Ohio has jurisdiction of the claim.

We need not rest our decision solely on that ground. In 1972, Congress not only moved the *Jensen* line shoreward, but also added the requirement for federal compensation that the injured worker be "engaged in maritime employment," by amending the definition of "employee" in Title 33, U. S. Code, Section 902(3). This change converted "[the] 'situs' test of eligibility for compensation to one looking to *both* the 'situs' of the injury *and* the 'status' of the injured." (Emphasis added.) *Northeast Marine Terminal Co.* v. *Caputo* (1977), 432 U. S. 249 at 265. Federal jurisdiction is invoked when the injury is on the navigable waters (as defined in 1972) and the injured employee is engaged by a maritime employer in maritime employment. Congress defined "maritime employment" in Title 33, U. S. Code, Section 902(3) as including "any longshoreman or other person engaged in longshoreing

---

[a]The shoreward movement was impelled by changing the definition of "employer" in Title 33, U. S. Code, Section 902(4) and restating the extent of coverage in Section 903, so that the "navigable waters" include "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel."

[*sic*] operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker \* \* \*."

We hold that Edwards was not "engaged in maritime employment." Obviously he was not engaged in longshoring operations (loading or unloading a ship's cargo), or in building or dismantling ships. Was he doing the work of a "harborworker [,] including a ship repairman"? We conclude he was not. Edwards was an unskilled worker sent to do non-expert work by a supplier of temporary shoreside labor who had no employees regularly engaged in longshoring or harborside operation. Edwards was not rated as a harborworker of any type, much less a ship repairman. The cleaning of a vessel may well be a part of the repairing thereof, whether it takes place before or after the repairs are made. However, the record before us fails to establish that by reason of the unanticipated happenstance that Edwards was assigned to hose down a barge on the Ohio River, he thereby became a ship repairman or his employer became one. "any of whose employees are employed in maritime employment [as redefined in 1972], in whole or in part, upon the navigable waters of the United States \* \* \*." Title 33 U. S. Code, Section 902(4). To hold otherwise would ignore both the language selected by Congress and its intent as revealed by the committee reports.[4]

Our decision comports with *Weyerhaeuser Co.* v. *Gilmore* (C. A. 9, 1976), 528 F. 2d 957, *certiorari denied* 429 U. S. 868, in which a lumber "pondman" was denied

---

[4]"The Committee does not intend to cover employees who are not engaged in loading, unloading, repairing, or building a vessel, just because they are injured in an area adjoining navigable waters used for such activity. \* \* \* Likewise the Committee has no intention of extending coverage under the Act to individuals who are not employed by a person who is an employer, *i. e.* a person at least some of whose employees are engaged, in whole or in part in some form of maritime employment. Thus, an individual employed by a person none of whose employees work, in whole or in part, on navigable waters, is not covered even if injured on a pier adjoining navigable waters." H. R. Rep. No. 92-1441, 92d Cong., 2d Sess. 10-11, *reprinted in*, 3 U. S. Cong. & Ad. News 4698, 4708 (1972).

federal compensation. He was injured while on a "pond" located in a salt-water bay on the Pacific Ocean, but his sole task was to feed logs into a sawmill on the shore. The court held that he was not engaged in maritime employment which, it stated, must have a realistically significant relationship to "traditional maritime activity involving navigation and commerce on navigable waters." He had already recovered benefits from the state compensation fund.

In conclusion, we hold that the Ohio Bureau of Workers' Compensation has jurisdiction over a claim arising from the death of an unskilled worker while he was hosing down a barge on the Ohio River, when he had been sent to the job by an Ohio supplier of temporary shoreside labor and where that employer contributed to the Ohio compensation fund with respect to the decedent and had no advance knowledge he would be working on the navigable waters, and did not in any other respect engage in maritime work, in whole or in part, on the navigable waters of the United States. Appellant's single claim that Ohio had no jurisdiction is without merit. As previously stated, we affirm.

*Judgment affirmed.*

PALMER, P. J. and SHANNON, J., concur.