**WEYERHAEUSER COMPANY,**
Petitioner,

v.

**Robert L. GILMORE, and Director, Office of Workers' Compensation Programs, and United States Department of Labor, Respondents.**

No. 74–3384.

United States Court of Appeals,
Ninth Circuit.

Dec. 5, 1975.
Rehearing and Rehearing En Banc
Denied Feb. 9, 1976.

958

Gregory W. Byrne (argued), Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, Or., for petitioner.

Joshua T. Gillelan, II (argued), U. S. Dept. of Labor, Washington, D. C., for respondents.

## OPINION

Before KILKENNY and GOODWIN, Circuit Judges, and EAST, Senior District Judge.[*]

EAST, Senior District Judge:

Weyerhaeuser Company (Weyerhaeuser) seeks a review of the decision issued by the Benefits Review Board (Board) for the Director, Office of Workers' Compensation Programs, United States Department of Labor (Respondent). That decision reversed a denial by an Administrative Law Judge (Law Judge) and granted the claim of Robert L. Gilmore (Claimant) for compensation under the Longshoremen's and Harbor Workers' Compensation Act (LHCH), 33 U.S.C. § 901 et seq. We reverse.

FACTS:

The following essential facts are undisputed:

Claimant was employed as a "pondman" by Weyerhaeuser at its sawmill in North Bend, Oregon. The sawmill is located on Coos Bay, a salt-water bay of the Pacific Ocean. Parts of the bay adjacent to the plant are enclosed by docks and log booms for the purpose of holding logs being processed and are known as "ponds." Claimant was injured when he fell from a floating walkway in one of these ponds.

The logs are transported to the mill in log rafts by an independent tug and

---

[*] Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

barge company whose employees tie up the rafts to floating docks. The rafts are then taken by Weyerhaeuser's employees driving "log broncs" (14′ to 16′ boats powered by diesel engines) to the mill where the logs are removed from the water by a chain hoist and debarked. After debarking, the logs are dropped back into the water and routed to the above-mentioned ponds where they are sorted by pondmen such as Claimant and fed into the mill for processing into lumber or plywood. The finished product is then loaded aboard ship.

At the time of his injury, Claimant was working at his duties involving the sorting of logs and feeding them into the mill for processing. In performing these duties, he would move about on floating walkways (and occasionally on the logs themselves), moving the logs by means of water jets and pike poles. He was required to wear a life jacket, hard hat, and cork boots. Claimant had no duties involving receiving the log rafts at the docks, operating the log broncs, initially moving the logs into the mill for debarking or loading ships with the finished product. Claimant is a member of the International Woodworkers of America labor union and is not a longshoreman or affiliated with the International Longshoremen's and Warehousemen's Union. He lost 21 days from work due to his injury and was paid benefits under the Oregon Workers' Compensation Law.

## PERTINENT STATUTES:

LHCA as amended on October 27, 1972, provides:

Section 902(3): "The term 'employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker . . ."

Section 903(a): "Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability . . . results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)."

## ISSUE ON REVIEW:

We deem the sole issue presented to be:

Whether Claimant was at the time of his injury an employee "engaged in maritime employment" within the purpose and purview of § 902(3) of the LHCA.

## DISCUSSION:

■ The amendment, § 902(3), does not define the phrase "engaged in maritime employment" other than to indicate that the phrase includes "any longshoreman . . . harborworker . . . ship repairman," etc. So far as we are advised, no court has yet construed and given a definition to the phrase and most certainly the Board did not attempt to do so. Rather the Board only reasoned that since Claimant was injured on navigable waters and Weyerhaeuser had other employees engaged in maritime employment, the Claimant would have been covered under LHCA prior to the 1972 amendment; therefore, he is covered now. The Board correctly stated:

"One of the purposes of the 1972 amendments to the Act was to extend coverage inland from the water's edge, not to narrow its scope."

The Board then inexplainably found and concluded:

"[A]nyone covered under the Act prior to the 1972 amendments must indeed be permitted to come within its protection subsequent to the amendments.

"The fact that claimant is called a pondman or millworker is irrelevant as to determining his qualifications as an employee within the terms of the Act. Therefore, the Board finds that Claimant's injury in the course of his employment was within the coverage of

the Longshoremen's and Harborworkers' Compensation Act, as amended, and he is entitled to benefits."

We cannot accept the Board's open door construction of the effect of the 1972 amendment to LHCA as a rational interpretation of the newly adopted 1972 prerequisite of eligibility of an employee to compensation, namely, that at the time of his injury he "be engaged in maritime employment."

The LHCA was first enacted in 1972 and it is of no help to recount, as does the Board's brief, the pre-1972 amendment decisions of the Supreme Court wrestling with the problem of finding admiralty jurisdiction to permit recovery by maritime workers for shore based injuries, or dealing with the complex problems created by the fictional "maritime, but local" doctrine to adjust state compensation laws with exclusive federal maritime jurisdiction. See Calbeck v. Travelers Insurance Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), and particularly the dissenting opinion of Mr. Justice Stewart commencing at page 132, 82 S.Ct. 1196.

We relegate those decisions to limbo because it is obvious to us that the 1972 amendments radically changed the basis for an employee's entitlement to federal compensation. Prior to the amendment, an employee was entitled to federal compensation if his injuries occurred on navigable waters and his employer had an employee (not necessarily the injured employee) engaged in maritime employment; however, since the amendment, an employee is entitled to federal compensation only if he is engaged in maritime employment and he is injured on navigable waters or an adjoining area customarily used for loading, unloading, repairing or building a vessel.

Thus, the 1972 amendments to the pertinent sections of LHCA eliminate the gray areas of jurisdiction under the former statute and place a clear line of demarcation between those employees entitled to the benefits of federal compensation and those entitled to recover under state law.

Further support for our thinking is found in the legislative history of the 1972 amendments. For example:

"[T]he Committee does not intend to cover employees who are not engaged in loading, unloading, repairing or building a vessel, just because they are injured in an area adjoining navigable waters used for such activity. Thus, employees whose responsibility is only to pick up stored cargo for further transshipment would not be covered, nor would purely clerical employees whose jobs do not require them to participate in the loading or unloading of cargo . . . ." Committee on Labor and Public Welfare S.Rep. 92–1125 at 13, 92 Cong., 2d Sess. (1972).

The Board's erroneous conclusion that Claimant is entitled to LHCA benefits stems from a misinterpretation of the frequently stated "expansion" of coverage by the 1972 amendments. This expansion refers only to the broadened definition of "navigable waters," (maritime jurisdictional requirement) which now includes "adjoining" piers and other areas prescribed in § 903(a). In expanding the maritime situs element of the Act, however, Congress clearly did not intend to broaden the class of covered employees to include anyone injured in an adjoining area. This intent is manifest in the legislative history. In debate before the House, Representative William Steiger stated:

"[T]he expansion of coverage is intended to bring about a measure of compensation uniformly applicable to persons customarily considered to be working in the business. Thus, even if an employee does not happen to be over navigable waters at the time he is injured, he will be covered as long as he is working as a longshoreman or harborworker, whether engaged in repairing a vessel or unloading it." 118 Cong.Rec. 36385, Part 27 (1972). (Emphasis added).

■ It is manifest to us that for the Board to have concluded that the Claimant would have been entitled to compensation prior to the amendment, it had to

read into the phrase "any [employee] engaged in maritime employment" as still including the legislatively discarded prerequisite of the *employer's status* as a maritime employer. We cannot join in such an "exercise in judicial legerdemain."

We join in the observation of the Law Judge that the intent of Congress in extending the Act was not to "open the doors" to all employees, but to minimize the adverse effect of a shoreside location or situs when a *maritime* employee is injured.

The original purpose of LHCA was to provide federal certainty of a fixed compensation for shore based *ship side workers* (longshoremen, etc.) who were injured in the course of their ship's service employment "without leaving employees at the mercy of the uncertainty, expense, and delay of fighting out in litigation whether their particular cases fell within" admiralty jurisdiction. *See Calbeck v. Travelers Insurance Co., supra,* at 121–24, 82 S.Ct. 1196.

■ The 1972 amended prerequisite of "maritime employment" is a clearly expressed congressional perpetuation of the essential element of admiralty jurisdiction over the employee. In other words, the fixed federal compensation is provided in lieu of the uncertainty of a recovery by an injured ship worker for a maritime tort. The occupational hazards intended to be guarded against are the traditional hazards to the ship's service employee arising in the course of his employment; *i. e.,* the perils of the sea and an unseaworthy vessel recognized under maritime laws. Accordingly we believe that to be entitled to the benefits of LHCA, an employee's employment must have a realistic relationship to the traditional work and duties of a ship's service employment. Otherwise the clear and unambiguous congressional language of "maritime employment" is nullified and rendered to read "any employment."

We hold that for an injured employee to be eligible for federal compensation under LHCA, his own work and employment, as distinguished from his employer's diversified operations, including maritime, must have a realistically significant relationship to "traditional maritime activity involving navigation and commerce on navigable waters," with the further condition that the injury producing the disability occurred on navigable waters or adjoining areas as defined in § 903. *See Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). *See also Onley v. South Carolina Electric & Gas Company,* 488 F.2d 758 (4th Cir. 1973), and *Crosson v. Vance,* 484 F.2d 840 (4th Cir. 1973).

The Law Judge thought that the Claimant at the time of the accident was not so "engaged in maritime employment" and denied the claim. The Law Judge reasoned that in order for the Claimant to recover:

"[A] relationship should exist between the duties of Claimant and some maritime service, navigation or commerce on navigable waters . . . .

"Here claimant was a mill worker. The navigable water [the log pond] was used as an easy means to transport logs from point to point in the manufacturing process and had no close relationship to any maritime activity . . . ."

■ The full significance of the Law Judge's reference to "the log pond" is more readily appreciated with an understanding of a Northwesterner's common knowledge of a sawmill's log pond operation. The "log pond" is a universal adjunct to a sawmill and is either: (1) an artificial lake or pond dug or banked in dry uplands and fed by well or imported water, or (2) a log boom or other type of partitioned area of a stream, bay or other self-supplying body of water. The "log pond" of either type is maintained and used solely for the utilitarian flotation method of holding, sorting, handling, and ultimate guidance of saw logs to and upon subsurface chain conveyors which carry the saw log out of the log pond into the mill's sawing operation.

We find it illogical to think of a pondman's work and duties at or on an upland sawmill's log pond as "maritime employment" in the traditional sense.

Neither do we believe that a bay side location or situs of a sawmill with its partitioned salt water log pond in any fashion changes the universal and customary nature of the pondman's work and *ipso facto* engages him in "maritime employment." Just as it was at the upland sawmill, there is still a total absence of any realistically substantial relationship of the pondman's work and duties at the bay side sawmill log pond to navigation or commerce upon navigable waters.

The Claimant's membership in a non-maritime union rather than in a maritime union speaks loudly for a joint labor-management practical and realistic construction of the nature of a pondman's work and duties as non-maritime employment.

Accordingly we conclude that the Claimant was not, in connection with his employment by Weyerhaeuser, engaged in maritime employment and is not entitled to LHCA benefits.

The decision of the Board is vacated and the decision of the Law Judge is reinstated. The cause is remanded to the Board for appropriate decision and orders consistent herewith.

Reversed and remanded.