**DUNCANSON–HARRELSON COMPANY and Employers Mutual Liability Insurance Company of Wausau, Petitioners,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States Department of Labor, Respondents,**

and

**Per S. Hed and William Hatchett, Intervenors and Real Parties in Interest.**

Nos. 78–1873, 79–7572.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1980.

Decided May 8, 1981.

B. James Finnegan, Kiernan & Finnegan, San Francisco, Cal., for petitioners.

Mark C. Walters, Washington, D. C., John R. Hillsman, San Francisco, Cal., for respondents; Linda L. Carroll, Washington, D. C., Stanford L. Gelbman, San Francisco, Cal., on brief.

Before ANDERSON, ALARCON and POOLE, Circuit Judges.

ALARCON, Circuit Judge:

This is a consolidation of two separate appeals brought by Duncanson-Harrelson, a marine construction company, and its liability insurer (employer), involving the question whether two injured employees, Per S. Hed and William Hatchett, were engaged in "maritime employment" within the meaning of the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act (the Act) at the time of their injuries.

### BACKGROUND FACTS

Per S. Hed was injured while working as a pile driver on the construction of an oil tanker dock in Martinez, California. The dock was to be used for off-loading oil tankers following the completion of an adjoining oil refinery. Hed injured his lower back when he reached into the water from the floating raft upon which he was working to retrieve some plywood that had been torn loose from the raft as it was being turned by a crane.

William Hatchett sustained an inguinal hernia while working as a pile driver on a pier enlargement project in Pittsburg, California. An ocean swell lifted the raft on which Hatchett was working and thrust upon him the full weight of a timber he was guiding into place.

Both Hed and Hatchett applied for benefits under the Act, which were awarded by an administrative law judge after a hearing. Duncanson-Harrelson appealed the benefit awards to the Benefits Review Board, which upheld the administrative law judge's decision.

In its appeal to this court, the employer argues that neither employee was a "harborworker" nor was "engaged in maritime employment" within the meaning of § 2(3) of the Act, because the 1972 amendments to the Act limit recovery to persons loading, unloading, repairing, building or breaking a vessel.

Duncanson-Harrelson also appeals the manner in which Hatchett's award was calculated and the amount awarded. It argues that: (1) the wrong code section was used to determine the amount of Hatchett's average weekly wage, (2) the determination of Hatchett's earning capacity is not supported by substantial evidence, (3) the administrative law judge's determination that Hatchett suffered permanent total disability is not supported by substantial evidence, (4) Duncanson-Harrelson's liability should

have been prorated, and (5), the statutory ten percent penalty should not have been assessed against it. We disagree with all but the last contention.

## DISCUSSION

### Scope of Review

 An award made by the Benefits Review Board pursuant to the Act will not be set aside by this court unless it is unsupported by substantial evidence, viewing the record as a whole, or unless it is predicated upon an erroneous view of the law. *O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951). Further, this court must give deference to the decision of the Benefits Review Board, because it rests "squarely in that area where administrative judgments are entitled to the greatest amount of weight by appellate courts. It is the product of administrative experience, appreciation of the complexities of the problem, realization of the statutory policies, and responsible treatment of the uncontested facts." *E. I. duPont de Nemours & Co. v. Collins*, 432 U.S. 46, 56–57, 97 S.Ct. 2229, 2235, 53 L.Ed.2d 100 (1977), quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 209, 67 S.Ct. 1575, 1583, 91 L.Ed. 1995 (1947).

### "Maritime Employment"

 Before the 1972 amendments to the Act, an injured worker whose employer had at least one employee engaged in maritime employment was not entitled to benefits unless his injury was sustained upon navigable waters. *Nacirema Operating Co. v. Johnson*, 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969). In 1972 Congress expanded the definition of "navigable waters" to include "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel . . ." Section 3(a) of the Act, 33 U.S.C. 903(a). *See Northeast Maritime Terminal Co. v. Caputo*, 432 U.S. 249, 259–264, 97 S.Ct. 2348, 2354–2357, 53 L.Ed.2d 320 (1977) and the citations to the House and Senate Reports therein. An employee can recover for an injury sustained in the expanded area, however, only if he was "engaged in maritime employment" at the time of his injury. *P.C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 78, 100 S.Ct. 328, 335, 62 L.Ed.2d 225 (1979); *Fusco v. Perini North River Associates*, 622 F.2d 1111, 1113 (2d Cir. 1980).

In *Weyerhaeuser Co. v. Gilmore*, 528 F.2d 957 (9th Cir. 1975), *cert. denied*, 429 U.S. 868, 97 S.Ct. 179, 50 L.Ed.2d 148 (1976), we held that in order for employment to be considered "maritime", it "must have a realistically significant relationship to 'traditional maritime activity involving navigation and commerce on navigable waters,' . . ." Id. at 961, quoting *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 272, 93 S.Ct. 493, 506, 34 L.Ed.2d 454 (1972). The administrative law judge, in determining that Hatchett was engaged in "maritime employment" within the meaning of the Act, reasoned that Hatchett's work constructing a "dolphin" (a place for incoming ships to tie up off the dock) served the essential maritime purpose of mooring a ship when it comes alongside the pier. Furthermore, Hatchett's work exposed him to many of the "perils of the sea" associated with traditional maritime activity. Indeed, Hatchett's injury was caused by an ocean swell that lifted his work raft.

Similarly, the Board concluded that Hed was engaged in maritime employment at the time of his injury. Applying the *Weyerhaeuser* standard, the Board reasoned that Hed's work constructing an off-shore dock for the unloading of oil from tankers and barges was related to the traditional maritime activity of facilitating commerce on navigable waters.

Because the administrative law judge correctly determined that both Hed and Hatchett were engaged in "maritime employment" at sites covered by the Act at the time of their injuries, we agree with the Board's conclusion that each claimant is a covered employee under the Act.

We need not pass upon the Board's conclusion that Hed and Hatchett were "harbor worker[s]" within the meaning of sec-

tion 2(3) of the Act. Because we agree that both injured men were "engaged in marine employment", it is unnecessary to decide whether or not the two pile drivers were also "harbor worker[s]."[1]

*Earning Capacity*

Before the ALJ, and through administrative appeal, the parties agreed that Hatchett's earning capacity should be determined under Section 10(c) of the Act, which provides:

> "(c) If either of the foregoing methods of arriving at the average annual earnings of the injured employee cannot reasonably and fairly be applied, such average annual earnings shall be such sum as, having regard to the previous earnings of the injured employee in the employment in which he was working at the time of the injury, and of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, or other employment of such employee, including the reasonable value of the services of the employee if engaged in self-employment, shall reasonably represent the annual earning capacity of the employee. 33 U.S.C. Section 910(c).

The earning capacity of an employee has been described as his *potential* earning power. *Hunter v. Duncanson-Harrelson Co.*, 8 BRBS 83, 91 (1978). The purpose of the award is to compensate the claimant for the effect of an injury has upon this potential. The employer has the burden of proving that the claimant's actual earnings in the twelve month period prior to his injury are not representative of his earning capacity. *Palmore v. Washington Metropolitan Area Transit Authority*, 9 BRBS 388, 22 (1978).

Proceeding under Section 10(c), the ALJ made a determination as to Hatchett's earning capacity. The Board reviewed the decision, but remanded to the ALJ in order to obtain a "clarification and/or modification with respect to claimant's earning capacity and average weekly wage." As stated in the Board's own words, this remand was necessitated because the Board was "unable to conclude that the ALJ's use of claimant's earnings for the preceding fifty two weeks was a fair and reasonable approximation of claimant's wage earning capacity *pursuant to Section 10(c)*" (emphasis added). On remand, the ALJ clarified his reasoning but did not modify the award. The Board subsequently upheld the clarified decision.

For the first time, in the briefs to this court, the employer has challenged the use of Section 10(c) as the method for determining earning capacity. It now argues that Section 10(b) should have been used on remand, because a wage study submitted by the employer was accepted into evidence by the ALJ.[2]

---

1. The Fifth Circuit recently chose to uphold a decision of the Board on the "maritime employment" rationale, citing *Weyerhaeuser v. Gilmore* as the test. In *Odom Const. Co. v. U. S. Dept. of Labor*, 622 F.2d 110 (5th Cir. 1980), the question on review was the coverage of an employee who was injured while moving large concrete blocks used to moor barges in a navigable canal. The court said that "[i]t is at least arguable that the repair of moorings even those not adjacent to main docks, is a type of job that could be performed by a typical harborworker. Yet we need not hold that [the injured employee] was engaged in 'harborworking' at the time of his injury, for Section 902(3) by its own terms states that longshoremen and harborworkers are not the only persons engaged in maritime employment ... Moving the blocks directly furthered maritime commerce (quotation and citation to *Weyerhaeuser v. Gilmore* omitted) ... On the facts before us ... [the

injured employee's] work at the time of his injury was maritime." *Id.* at 112–113.

In *Brown & Root v. Joyner*, 607 F.2d 1087 (4th Cir. 1979), *cert. denied*, 446 U.S. 981, 100 S.Ct. 2960, 64 L.Ed.2d 837 (1980), the Fourth Circuit reviewed only the status of two employees as engaged "in maritime employment" and, finding them so engaged, did not review the Board's determination that the employees would also be covered as "harborworkers." 607 F.2d at 1090 & n.5.

2. The wage study consisted of a comparison of Hatchett's actual earnings in the four years prior to his injury with the actual earnings in the same period of a number of individuals "as similar as possible to Mr. Hatchett in terms of age and experience." Section 10(b) provides:

> If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings, if a six-day worker, shall

■ This argument must be deemed waived because the employer failed to raise it below. Although the employer was successful in having the wage study entered into evidence on remand, it did not claim that a different statutory formula should be employed. " 'A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented . . .' *Unemployment Compensation Commission of Territory of Alaska v. Aragon*, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946). Thus in the absence of exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative proceeding at the appropriate time. (citations omitted)." *Getty Oil Co. v. Andrus*, 607 F.2d 253, 256 (9th Cir. 1979). *See also* 3 Davis, Administrative Law Treatise 20.06 at 91–97 (1958).[3] We find no "exceptional circumstances" in this case that would warrant consideration of the employer's contention.[4]

## SUBSTANTIAL EVIDENCE

The employer's argument that the ALJ's findings as to Hatchett's earning capacity are not supported by substantial evidence is without merit. The ALJ determined that

> consist of three hundred times the average daily wage or salary, and, if a five-day worker, two hundred and sixty times the average daily wage or salary, which an employee of the same class working substantially the whole of such immediately preceding year in the same or in similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed. 33 U.S.C. section 910(b).

**3.** The wisdom of the foregoing rule is obvious in a case such as this. Because of the employer's failure to raise below the issue of the applicability of subsection (b), a number of questions went unasked and unanswered. The wage study that the employer now asserts compels application of subsection (b) does not specify whether Hatchett or the comparison workers were *five or six day workers.* There was no opportunity to challenge the report on the basis of whether the comparison workers worked substantially the whole of the years for which their wages were used as comparison. Nor was the use of the *four* preceding years for comparison questioned, when subsection (b)

Hatchett's average annual earnings were $15,002.05, the actual amount earned by Hatchett during the fifty-two week period prior to his injury. He then calculated Hatchett's annual average weekly wage by dividing by 52. The resulting figure was $288.50.

■ The employer claims that neither the ALJ nor the Board understood the wage study and that reference to Hatchett's significant amount of overtime hours during the year prior to his injury shows the misunderstanding. The wage study itself, however, states that "[a]nother significant factor in Mr. Hatchett's work pattern is the fact that in spite of working relatively few hours per month, he managed to have a high percentage of overtime hours included in his total number." Since earning capacity is a claimant's "potential" earning power, the ALJ was correct in using actual earnings during the year preceding the injury as an accurate measure of what Hatchett's earning capacity would likely have been had he not been injured. The employer has failed to meet its burden of proving that Hatchett's actual earnings in the twelve month period prior to his injury are not representative of his earning capacity.[5]

speaks only of "such immediately preceding *year*" (emphasis added).

**4.** In addition to the absence of any "exceptional circumstances" that would warrant our consideration of the employer's tardy contention, there was nothing wrong with the ALJ accepting the wage study and considering it under subsection (c). Subsection (c) requires that regard be given "to the previous earnings of the injured employee . . . and of other employees of the same or most similar class . . . ."

**5.** The employer is dismayed with the award because during the previous four years, Hatchett earned a total of only $33,048.00. The $15,000 he earned in 1975 is almost one-half of his total earnings for the entire four year period, 1972 through 1975. This is explained by the fact that Hatchett was compensated for a high percentage of overtime hours during 1975 as compared to the total number of hours worked. We see nothing wrong with the administrative tribunal considering an employee's willingness and ability to secure overtime compensation when calculating that employee's potential

*Permanent Total Disability*

■ The employer claims that the ALJ's finding of permanent total disability is not supported by substantial evidence. We disagree.

"We have here a pure question of fact which was resolved against the [employer] by the ALJ and the Board. Where the ALJ relies on witness credibility in reaching his decision, our court will interfere only where the credibility determinations conflict with the clear preponderance of the evidence (citations omitted), or where the determinations are 'inherently incredible or patently unreasonable.' *NLRB v. Anthony Co.*, 557 F.2d 692, 695 (9th Cir. 1977)." *Cordero v. Triple A Mach. Shop*, 580 F.2d 1331, 1335 (9th Cir. 1978), *cert. denied*, 440 U.S. 911, 99 S.Ct. 1223, 59 L.Ed.2d 459 (1979). The employer claims that Hatchett's credibility was severely undermined because during the period he claimed before the ALJ to be disabled, he had applied for state unemployment benefits, indicating that he believed that he was able to work.

■ The ALJ noted in his opinion that there was a conflict between Hatchett's claim of disability, on the one hand, and his receipt of unemployment benefits, on the other. The ALJ resolved this conflict by finding that the fact that Hatchett was able to draw unemployment benefits supported the inference that no work that Hatchett was able to do was available. The availability of work a claimant is able to perform is one of the considerations in determining disability. *See Watson v. Gulf Stevedores Corp.*, 400 F.2d 649 (5th Cir. 1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1471, 22 L.Ed.2d 755 (1969). Most importantly, the ALJ was entirely aware of the alleged inconsistency in Hatchett's posi-

tions, but concluded, nonetheless, that his testimony in support of his claim of total permanent disability was credible. The Board upheld that determination. We do not find this determination to be inherently incredible or patently unreasonable as urged by the employer.

In regard to the expert medical testimony, we note that "all doubtful questions of fact are to be resolved in favor of the injured employee." *Strachan Shipping Co. v. Shea*, 406 F.2d 521, 522 (5th Cir. 1969), *cert. denied*, 395 U.S. 921, 89 S.Ct. 1773, 23 L.Ed.2d 283 (1969). This rule was applied by both the Administrative Law Judge and the Board in resolving the inevitable conflict that developed between the testimony of the employer's and employee's medical experts.

*Section 8(f)*

■ Section 8(f) of the Act (33 U.S.C. section 908(f)) provides for a limitation on an employer's liability for current injuries suffered by its employees when the current injury coalesces with a previous disability.[6] The result is a proration of the claimant's award between the employer and the Second Injury Fund provided by the government. The employer claims that the ALJ erred in determining that Section 8(f) did not limit its liability to claimant based upon a 1963 back injury previously suffered by claimant.

The Board found that there are three requirements, each of which must be satisfied before Section 8(f) is applicable. Citing *Dillingham Corporation v. Massey*, 505 F.2d 1126, 1128 (9th Cir. 1974), the Board stated that "the claimant must have been permanently partially disabled when hired by employer, the permanent partial disability must have been manifested to employer,

earning capacity. *Cf. Palacios v. Campbell Industries*, 633 F.2d 840 at 842 (9th Cir. 1980) (willingness to work held to be a proper factor in determining earning capacity).

**6.** Section 8(f) provides in pertinent part that when an

employee has a permanent partial disability, found not to be due solely to that injury, and such disability is materially and substantially

greater than that which would have resulted from the subsequent injury alone, the employer shall provide . . . compensation for one hundred and four weeks only. (2) After cessation of the payments . . . the employee . . . shall be paid the remainder of the compensation that would be due out of the special fund established in section 944 of this title. 33 U.S.C. section 908(f).

and the claimant must have been rendered permanently and totally disabled not due solely to the injury suffered while working for employer." The Board held that substantial evidence supported the ALJ's finding that claimant's permanent total disability was due *solely* to the injury incurred while working for employer. Since the last of the three prerequisites for application of Section 8(f) was missing, the Board found it unnecessary to review the ALJ's findings in further detail.

We agree with the Board's decision. The employer does not claim that Hatchett's permanent total disability is based upon *both* the old back injury and the hernia Hatchett suffered while working for employer. Since Hatchett's disability was not the result of the coalescence of a prior injury with the current one, section 8(f) would not limit employer's liability.

*Section 14(e)*

 The Director concedes that the issue of the ten percent penalty has been resolved by *National Steel & Shipbuilding Company v. U. S. Dept. of Labor*, 606 F.2d 875 (9th Cir. 1979). In *National Steel* this court held that the ten percent "assessment applies only to payments not made from the time the employer learns of the disability to the date a notice is finally filed." *Id.* at 879. Therefore, the imposition of the assessment on the entire award was error.

The orders appealed from are affirmed in all respects, except that in the Hatchett case, the imposition of the ten percent assessment is modified to limit the penalty to compensation accrued but unpaid prior to the filing of the notice of controversion.