683 F.2d 309
 Lawrence SCHWABENLAND and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Petitioners,
v.
SANGER BOATS and Travelers Insurance Company, Respondents.
 Nos. 81-7064, 81-7075.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 12, 1982.
Decided July 26, 1982.
 
 William J. Seiler, Miles, Sears & Fanni, Fresno, Cal., Albert H. Sennett, Hanna, Brophy, MacLean, McLeer & Jensen, San Francisco, Cal., for Schwabenland.
 Joshua T. Gillelan, II, Washington, D. C., for U. S. Government.
 Petition for Review of a Decision of the Benefits Review Board.
 Before CHOY, PREGERSON, and POOLE, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 Lawrence Schwabenland petitions for review of the Benefits Review Board's (the Board) denial of his claim for benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-50 (the Act). Because the Board applied the wrong test for determining Schwabenland's employee "status" and because we are convinced that he meets the test we announced in Weyerhaeuser Co. v. Gilmore, 528 F.2d 957, 961 (9th Cir. 1975), cert. denied, 429 U.S. 868, 97 S.Ct. 179, 50 L.Ed.2d 148 (1976), we reverse and remand.
 
 
 2
 * At the time of his injury, Schwabenland was employed as the sales manager for Sanger Boats (Sanger), a manufacturer and seller of custom-built, high-performance recreational and racing boats. He spent approximately 30 percent of his working time inspecting boats in various stages of production to ensure that they conformed to the buyers' specifications and were free from cosmetic defects. In addition to his sales and inspection duties, Schwabenland acted as the primary test driver and pilot of new model boats (thereby participating in the development of the models), performed occasional maintenance on the boats, and participated in approximately 30 weekend races per year in which he drove Sanger's boats for promotional purposes. Schwabenland was injured on July 29, 1973 when the boat he was testing flipped over.
 
 
 3
 Sanger paid Schwabenland workers' compensation disability benefits under California law but Schwabenland claimed the higher compensation available under the Longshoremen's Act. Sanger and its workers' compensation insurer, Travelers Insurance Company (Travelers), contested his claim to benefits under the Act because they did not believe that he qualified as an "employee," a term defined by § 2(3) of the Act as a "person engaged in maritime employment." Schwabenland then filed a claim for compensation with the United States Department of Labor.
 
 
 4
 Determining Schwabenland's "employee" status by reference to his "overall activities," an administrative law judge denied Schwabenland's claim for compensation under the Act. The judge ruled that Schwabenland did not fall within the class of covered employees because his employment did not have "a realistic significant relationship to the maritime activities involving navigation and commerce over navigable waters contemplated by Congress in amending the Federal Act."
 
 
 5
 On appeal, the Board also focused on Schwabenland's overall employment and held that a worker must spend a substantial amount of work time performing maritime duties in order to fall within the coverage of the Act. Thus, while Schwabenland's activities at the time of the injury "were arguably maritime in nature," the Board considered it unnecessary to determine whether "this work constituted maritime employment since there is no evidence in the record that claimant's work testing and racing employer's boats occupied a substantial portion of his time."
 
 
 6
 Schwabenland asserts that the Board was incorrect in requiring that maritime activities occupy a "substantial portion" of his time and also argues that he satisfies the employee "status" test required for coverage under the Act. Sanger and Travelers dispute Schwabenland's "status" and argue that in enacting the Act, Congress never intended to cover the recreational-boat industry and, therefore, Schwabenland's injuries are not compensable under the Act.[1]
 
 
 7
 We will set aside the Board's decision only if it is unsupported by substantial evidence or is predicated upon an erroneous view of the law. Duncanson-Harrelson Co. v. Director, Office of Workers' Compensation Programs, 644 F.2d 827, 830 (9th Cir. 1981). In this case the facts are uncontroverted and the questions before this court are purely ones of law.
 
 II
 
 8
 To be eligible for compensation under the Act, a claimant must sustain an injury within the "situs" defined by § 3(a) of the Act[2] and must have the "status" of an employee as defined by § 2(3).[3] It is not disputed that Schwabenland meets the situs requirement: his injury occurred on the Oakland Estuary, a navigable water of the United States. Thus, the main issue is whether Schwabenland's test-driving and boat-inspection duties make him an "employee," i.e., a person "engaged in maritime employment," under § 2(3).
 
 
 9
 We have stated that for employment to be maritime, it "must have a realistically significant relationship to 'traditional maritime activity involving navigation and commerce on navigable waters.' " Weyerhaeuser Co. v. Gilmore, 528 F.2d at 961 (quoting Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 272, 93 S.Ct. 493, 506, 34 L.Ed.2d 454 (1972)). In Weyerhaeuser, we noted that "(t)he occupational hazards intended to be guarded against are the traditional hazards to the ship's service employee arising in the course of his employment; i.e., the perils of the sea and an unseaworthy vessel recognized under maritime laws." Id.
 
 
 10
 Using the Weyerhaeuser test, courts have held that the Act covers workers involved in construction related to maritime activities. See Duncanson-Harrelson Co. v. Director, Office of Workers' Compensation Programs, 644 F.2d at 830-31 (employee involved in construction of tie-up for incoming ships covered under Weyerhaeuser test); Odom Construction Co. v. United States Department of Labor, 622 F.2d 110, 113 (5th Cir. 1980) (land-based construction worker injured after moving concrete blocks used as tie-ups covered under Weyerhaeuser test), cert. denied, 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981); cf. Trotti & Thompson v. Crawford, 631 F.2d 1214, 1220-22 (5th Cir. 1980) (carpenter constructing pier engaged in maritime employment). Coverage has also been extended to work related to the construction of recreational boats. See Mississippi Coast Marine, Inc. v. Bosarge, 637 F.2d 994, 998 (carpenter working on 30-foot pleasure boat resting on blocks covered under Weyerhaeuser test), modified in part, 657 F.2d 665 (5th Cir. 1981). It is undisputed that Schwabenland conducted visual inspections of boats under construction to make certain that they were in compliance with the orders received. The inspection duties, the testing of new models to evaluate their design, and the performance of occasional maintenance in connection with the testing activities would seem to be sufficiently related to the construction of the vessels to constitute maritime employment covered under the Act.
 
 
 11
 The Board, however, determined Schwabenland's maritime-employee status by reference to his overall employment and found that Schwabenland had not spent a substantial portion of his work time performing maritime duties. Consequently, the Board found that Schwabenland was not a maritime employee under the Act.
 
 
 12
 The Board's "substantial portion" test is a fairly-recent pronouncement. See Boudloche v. Howard Trucking Co., 11 BRBS 687, BRB No. 78-383 (1979), rev'd, 632 F.2d 1346 (5th Cir. 1980), cert. denied, 452 U.S. 915, 101 S.Ct. 3049, 69 L.Ed.2d 418 (1981). Only two circuits have had the opportunity to examine the test and both have rejected it. See Graziano v. General Dynamics Corp., 663 F.2d 340, 343 (1st Cir. 1981); Boudloche v. Howard Trucking Co., 632 F.2d 1346, 1348 (5th Cir. 1980); cert. denied, 452 U.S. 915, 101 S.Ct. 3049, 69 L.Ed.2d 418 (1981).
 
 
 13
 The Supreme Court has never directly addressed the "substantial portion" test but it has said that the status requirement is satisfied as long as "some portion" of the employee's work time involves maritime activities. See Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 273, 97 S.Ct. 2348, 2362, 53 L.Ed.2d 320 (1977) (employees who spend at least some of their time in indisputably longshoring operations are longshoremen under the Act). To substitute "substantial" for "some" would depart from the letter and the spirit of Caputo, see Boudloche v. Howard Trucking Co., 632 F.2d at 1348, and would be contrary to the Supreme Court's directive to take an expansive view of the coverage to give effect to the remedial purpose of the Act. See Northeast Marine Terminal Co. v. Caputo, 432 U.S. at 268, 97 S.Ct. at 2359; Ramos v. Universal Dredging Corp., 653 F.2d 1353, 1358-59 (9th Cir. 1981).
 
 
 14
 We therefore reject the Board's "substantial portion" test. Because the facts are not disputed, we are able to determine whether Schwabenland was a maritime employee within the meaning of § 2(3). We hold that Schwabenland's regular performance of maritime operations, even though it constituted less than a "substantial portion" of his overall working time, was sufficient to satisfy the status requirement of § 2(3).[4]
 
 III
 
 15
 Sanger and Travelers attempt to limit the reach of the Act by contending that it was never meant to cover the small recreational-boat industry. They argue that the legislative history shows that Congress did not intend to include the industry within the benefited class covered. The only support cited for this contention, however, is a minor excerpt from a floor debate in the House of Representatives.[5] We do not believe that the debate is helpful to the resolution of the issue.
 
 
 16
 The Supreme Court has implied that the Act does not exclude persons employed in the recreational-boat industry. In Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184 (1941), the Court held that a janitor, employed by a small motorboat and outboard-motor supplier, was covered under the Act. The Court commented that the janitor had been engaged in a "clearly maritime activity" when he drowned after the 18-foot motorboat in which he was riding capsized while another employee was testing an outboard motor. Id. at 247, 62 S.Ct. at 223-224. The type of vessel or the nature of the industry involved does not appear to have been significant.
 
 
 17
 Although the Act has been substantially amended since the Parker decision, see the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, Pub.L.No.92-576, 86 Stat. 1251, there is no indication that Congress, in amending the Act, intended to limit its coverage solely to claimants injured in connection with the nonrecreational-boat industry. Moreover, to impose the difficult requirement of determining which operations are commercial and which are recreational would seem to conflict with the goals of the 1972 amendments to provide uniform coverage and to eliminate jurisdictional problems.
 
 
 18
 The Fifth Circuit, the only circuit to have addressed this issue, has determined that the Act is applicable to recreational-boat builders. See Mississippi Coast Marine, Inc. v. Bosarge, 637 F.2d at 996. The Board has likewise concluded that the Act applies to the small recreational-boat industry. See Napoles v. Donzi Marine, Inc., 5 BRBS 685, 698, BRB No. 76-262 (April 6, 1977) (extending coverage to a manufacturer of small boats and pleasure crafts).
 
 
 19
 The Supreme Court's decision in Parker, the explicit statutory provisions of the Act, and the decisions by the Fifth Circuit and the Board persuade us to reject Sanger's and Travelers' contention. We therefore hold that the small recreational-boat industry is covered by the Act.
 
 
 20
 The Board's decision is reversed and the case is remanded for proceedings consistent with this opinion.
 
 
 21
 REVERSED and REMANDED.
 
 
 
 [1]
 On appeal, Sanger also argues that Schwabenland, because he was "the master or member of a crew" of a vessel, is not an employee under § 2(3) of the Act, 33 U.S.C. § 902(3). We need not consider this question because it was not raised before the Board. See Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 251, 62 S.Ct. 221, 225, 86 L.Ed. 184 (1941); Moore Dry Dock Co. v. Pillsbury, 169 F.2d 988, 991 (9th Cir. 1948)
 
 
 [2]
 To satisfy the situs requirement, a claimant must sustain an injury upon
 the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel).
 33 U.S.C. § 903(a).
 
 
 [3]
 To satisfy the status requirement, a claimant must be
 any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.
 33 U.S.C. § 902(3) (emphasis added).
 
 
 [4]
 We need not decide whether Schwabenland should be able to recover because he was engaged in maritime employment at the moment of his injury. See Hullinghorst Industries v. Carroll, 650 F.2d 750, 754 (5th Cir. 1981), cert. denied, --- U.S. ----, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982). We have previously rejected the "moment of injury" test when its adoption would have denied recovery. See Brady-Hamilton Stevedore Co. v. Herron, 568 F.2d 137, 140 (9th Cir. 1978)
 
 
 [5]
 The following debate occurred on the floor of the House involving Mr. Graham, the Chairman of the House Judiciary Committee (which reported out the 1927 Act), over the scope of pre-amendment § 3(a):
 Mr. Abernethy: As I understand the gentleman's interpretation of the bill, it does not include small repair yards.
 Mr. Graham: The gentleman spoke about the words in the fourth paragraph, "including any dry dock"?
 Mr. Abernethy: Yes.
 Mr. Graham: And the gentleman was apprehensive that that might possibly cover a small shipyard. I can assure the gentleman that it will not. A dry dock is under admiralty, so declared in the decisions of the Supreme Court, and a dry dock is defined legally, so that it can not include a shipyard.
 ....
 Mr. Abernethy: As I understand, this bill takes from its provisions seamen, fishermen, and oystermen, and does not include any shipyard or repairyard except a dry dock.
 Mr. Graham: That is correct.
 
 
 [68]
 Cong.Rec. 5403 (1927)