2 F.3d 1158
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
TODD PACIFIC SHIPYARDS CORPORATION; Aetna Casualty and
Surety Company, Petitioners,
v.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, Respondent.
 No. 91-70557.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 10, 1993.
Decided Aug. 2, 1993.
 
 Before BRUNETTI, LEAVY and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Todd Pacific Shipyards Corporation and Aetna Casualty and Surety Company (collectively "Todd") petition for review of a Decision and Order of the Benefits Review Board ("BRB") reversing the Decision and Order of Administrative Law Judge R.S. Heyer under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 901 et seq. (1988) (LHWCA). In the challenged Order, the BRB reversed the ALJ's Order, which limited Todd's liability for permanent disability payments to 104 weeks pursuant to section 8(f) of the LHWCA, 33 U.S.C. Sec. 908(f). Specifically, the Order appealed from addressed only the issue of whether the claimant's permanent preexisting partial disability was manifest to the employer prior to the claimant's most recent injury. The BRB reversed as unsupported by substantial evidence the ALJ's finding that the manifest element was satisfied. We have jurisdiction to review the BRB's Order under 33 U.S.C. Sec. 921(c), and we affirm the Decision and Order of the Benefits Review Board.
 
 
 3
 * MANIFEST REQUIREMENT
 
 
 4
 For the first time, in the briefs to this court, Todd has challenged the use of a manifest requirement in the court's determination of Sec. 8(f) relief. The Ninth Circuit consistently has held that, in order to be entitled to relief under Sec. 8(f), an employer must show the permanent preexisting partial disability was manifest to the employer prior to the last injury. Bunge Corp., INA v. Director, OWCP, 951 F.2d 1109, 1111 (9th Cir.1991); Director, OWCP v. Cargill, Inc., 709 F.2d 616, 619 (9th Cir.1983) (en banc). Todd argues, however, the court should follow the decision of the Sixth Circuit in American Ship Building Co. v. Director, OWCP, 865 F.2d 727 (6th Cir.1989), and hold that "an employer must, by presenting objective evidence that was in existence prior to the second injury, establish that the condition manifested itself to someone prior to that injury." American Ship Building, 865 F.2d at 732.
 
 
 5
 We must deem this argument waived because Todd failed to raise it before the BRB. Duncan-Harrelson Co. v. Director, OWCP, 644 F.2d 827, 832 (9th Cir.1981). As we noted in Duncan-Harrelson, "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented." Id. (quotations omitted). Although a reviewing court may address this type of issue where exceptional circumstances exist, in this case we find no exceptional circumstances that warrant consideration of Todd's argument. Id.
 
 II
 SATISFACTION OF MANIFEST REQUIREMENT
 
 6
 Todd contends that BRB erred in reversing as not supported by substantial evidence the ALJ's finding that the manifest requirement was satisfied. "We review the Board's decisions for errors of law and adherence to the substantial evidence standard." Port of Portland v. Director, OWCP, 932 F.2d 836, 838 (9th Cir.1991). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Lockheed Shipbuilding v. Director, OWCP, 951 F.2d 1143, 1145 (9th Cir.1991) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).
 
 
 7
 Even where, as in this case, the claimant has a permanent preexisting partial disability, this Circuit also has "adopted a 'latent-manifest' test to determine if the employer is entitled to relief under Sec. 8(f)." Director, OWCP v. Campbell Indus., Inc., 678 F.2d 836, 840 (9th Cir.1982), cert. denied, 459 U.S. 1104 (1983), overruled on other grounds by Director, OWCP v. Cargill, Inc., 709 F.2d 616 (9th Cir.1983) (en banc). "An underlying condition which is not manifest to a prospective employer cannot qualify as a previous disability [for the purposes of Sec. 8(f) ]." Dillingham Corp. v. Massey, 505 F.2d 1126, 1128 (9th Cir.1974); Cargill, 709 F.2d at 619 ("[T]he employer [must] show ... that the disability was manifest to the employer prior to the last injury....").
 
 
 8
 "The key to the [manifest requirement] is the availability to the employer of knowledge of the pre-existing condition, not necessarily the employer's actual knowledge of it." Dillingham, 505 F.2d at 1128.
 
 
 9
 The determination of a previous disability's manifestation is a factual one, and a number of factors may come into play. The employee's appearance, medical reports and work experience are relevant, but the critical element is what the employer has available to him when the hiring occurs, should he decide to take notice of it.
 
 
 10
 Id. Therefore, to support a finding that the disability was manifest to the employer prior to the injury, the record must contain either evidence the employer had actual knowledge of the disability prior to the injury, or sufficient unambiguous, objective, and obvious documentary evidence, which was available to the employer prior to the injury, from which the disability is readily discoverable. Bunge Corp., 951 F.2d at 1111.
 
 
 11
 Having reviewed the record, the BRB concluded "there [was] no evidence in the record sufficient to support the administrative law judge's determination that claimant's pre-existing mental limitations were manifest to employer." We agree. If the results of the vocational and intelligence tests performed on the claimant following her knee injury had been available to Todd prior to the claimant's injury, then they may have constituted a "sufficient unambiguous, objective and obvious indication of a psychological disability." Bunge Corp., 951 F.2d at 1111. If so, the disability would be considered "manifest" whether or not Todd had actual knowledge of those test results. However, in this case, the tests were performed after the claimant's knee injury. Therefore, the results of the vocational and intelligence tests will not support the ALJ's finding, because we have held specifically that a "disability is not manifest when it is unknown to the employer and merely might have been discovered had proper testing been performed." Id.
 
 
 12
 Todd also contends the claimant's appearance and testimony before the ALJ was sufficient evidence to support the ALJ's finding that the claimant's mental disability was manifest prior to her knee injury. Todd cites as support American Mut. Ins. Co. of Boston v. Jones, 426 F.2d 1263 (D.C.Cir.1970), in which the court stated, "Clearly some degrees of mental retardation are so severe that they cannot fairly be characterized as other than 'manifest.' " Jones, 426 F.2d at 1268. Based on this statement, Todd argues the ALJ was correct in finding the claimant's degree of retardation can only fairly be characterized as manifest.
 
 
 13
 We reject Todd's argument based on the language from Jones. We note that the court in Jones, having stated the general proposition of law quoted above, nevertheless concluded that the claimant in question, who had scored a 69 on an intelligence test, was on "the borderline of mental retardation," id., and that without any evidence in the record to support the claimant's alleged degree of social maladaption due to limited intelligence, his disability could be fairly classed as something other than manifest. Id. We find a similar situation exists in the instant case. Here, the claimant's intelligence scores were higher than the claimant in Jones, placing the instant claimant in a class best described as one in which "the degree of mental retardation cannot be adequately gauged by intelligence quotient alone." Id. In other words, although we agree that while a class of claimants may suffer from degrees of mental retardation that cannot fairly be characterized as other than "manifest", we disagree with Todd's contention that this claimant's mental disability was so severe as to place her in such a class.
 
 
 14
 Moreover, in a similar situation, we have rejected an ALJ's reliance on his personal observations as "sit and squirm" jurisprudence. Perminter v. Heckler, 765 F.2d 870 (9th Cir.1985). In Perminter, we held a "[d]enial of [disability insurance] benefits cannot be based on the ALJ's observations of [a claimant], when [the claimant's] statements to the contrary ... are supported by objective evidence." Id. at 872. Although Perminter involved an ALJ's findings concerning the existence of a disability, we conclude the rule applies with equal force in the instant case. In this case, the facts contained in the record, which show the claimant completed the eighth grade in school, has held a variety of jobs including field hand, waitress and cook in a restaurant, maid in a hotel, cleaning woman in a nursing home, and laborer at Todd, and is married and has raised nine children, constitute objective evidence supporting the conclusion that the claimant did not have a mental disability that "cannot fairly be characterized as other than manifest." Therefore, where the objective evidence in the record supports a finding contrary to the ALJ's finding based upon his personal observation of the claimant's appearance, we must reject the ALJ's finding that the claimant's mental disability must have been manifest to Todd prior to her knee injury.
 
 
 15
 In an attempt to distinguish Jones on the facts, Todd argues the evidence absent from the record in Jones is present in the instant case in the form of results from vocational and intelligence tests performed after the last injury. Upon review of the record, however, we conclude Todd did not present sufficient evidence to show "that [the claimant], up to the time of [her] injuries, showed a sufficient degree of social maladaption due to limited intelligence that [her] disability could be fairly classed as 'manifest.' " Id. Todd placed in the record no documentation of claimant's reduced ability to work due to her limited intelligence prior to her injury. In fact, the record contains only evidence of the claimant's ability to perform in society, which contradicts the claim that her mental disability was manifest. Furthermore, the results of the vocational and intelligence tests administered after the claimant's injury do not provide the necessary evidence that supports a finding that Todd had actual knowledge of the claimant's mental disability.
 
 
 16
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3