**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 10 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SEA-LOGIX, LLC and SIGNAL MUTUAL INDEMNITY ASSOCIATION, LTD., <br><br> Petitioners, <br><br> v. <br><br> WILLIE BOOKER and DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, <br><br> Respondents. | No. 09-71186 <br><br> BRB Nos.  06-0908 <br> 09-0380 <br><br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Benefits Review Board

Argued and Submitted April 16, 2010
San Francisco, California

Before:  ARCHER, Senior Circuit Judge,[**] and CALLAHAN and BEA, Circuit
Judges.

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Glenn L. Archer, Jr., Senior United States Circuit
Judge for the Federal Circuit, sitting by designation.

Sea-Logix, LLC and Signal Mutual Indemnity Association, Ltd. (collectively, "Sea-Logix") bring this petition for review of a decision of the Benefits Review Board ("Board") awarding benefits to Willie Booker ("Booker"), a former Sea-Logix employee, for injuries under the Longshore and Harbor Workers' Compensation Act ("Longshore Act" or "Act"), 33 U.S.C. § 901 *et seq.* Booker and the Director of the Office of Workers' Compensation Programs, U.S. Department of Labor ("Director") oppose Sea-Logix's petition. We have jurisdiction pursuant to 33 U.S.C. § 921(c), and we deny the petition for review.[1]

**1.**     We review the Board's construction of the Longshore Act de novo. *Gen. Constr. Co. v. Castro*, 401 F.3d 963, 965 (9th Cir. 2005). However, we "respect the [Board's] interpretation of the statute where such interpretation is reasonable and reflects the policy underlying the statute." *Id.* (internal citations omitted). We give limited deference to the Director's interpretation of the Act where, as here, it is a litigation position first adopted in judicial proceedings. *Gilliland v. E.J. Bartells Co.*, 270 F.3d 1259, 1262 (9th Cir. 2001).

**2.**     The sole issue presented in this petition is whether Booker satisfies the Longshore Act's "status" requirement. *See* 33 U.S.C. § 902(3). To have status,

---

[1] Because the parties are familiar with the facts and procedural history, we do not restate them here except as necessary to explain our decision.

the claimant must be a "person engaged in maritime employment." *Id.* Specifically, he must "engage[] in intermediate steps of moving cargo between ship and land transportation." *P.C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 83 (1979). The test focuses on loading and unloading of cargo because Congress anticipated that some land-only workers would receive benefits under the Act. *Id.* at 80. Regular performance of some maritime duties is sufficient for status even if the duties are not a substantial portion of the claimant's work. *See Schwabenland v. Singer Boats*, 683 F.2d 309, 312 (9th Cir. 1982). We affirm as reasonable the Board's determination that three of Booker's regularly performed job duties entitle him to Longshore Act status. *Cf. Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 262-63 (1977); *Pfeiffer*, 444 U.S. at 83.

3.      Booker is entitled to Longshore Act status based on his transportation of cargo from the Port of Oakland's Maersk Terminal to Sea-Logix's container freight station ("CFS"). Applying *Caputo* and *Pfeiffer*, Booker's transportation of cargo was an intermediate step in the unloading process that continued until the containers were stripped. We find unpersuasive Sea-Logix's contentions that Booker lacks Longshore Act status because he is a truck driver, he drove on public roads for part of the time, he did not physically handle cargo, he would allegedly not have been covered under the pre-1972 Longshore Act, and legal liability for the

containers shifted from the Maersk Terminal to Sea-Logix when he exited the Maersk Terminal.

4.      Similarly, Booker is entitled to Longshore Act status based on his transportation of cargo in the reverse direction, from the CFS to the Maersk Terminal. This job duty required him to transport already-stuffed containers, meaning that he participated in a loading process that was already underway. *Cf. Pfeiffer*, 444 U.S. at 83.

5.      Booker also has status based on his transportation of cargo from the Maersk Terminal to the Joint Intermodal Terminal railhead, where railway employees loaded the containers onto railway cars for transit to consignees. Booker's transportation of cargo was an intermediate step in the cargo's transition from ship to land transportation. *Cf. Pfeiffer*, 444 U.S. at 71, 83 (fastening vehicles to railroad flat cars onto which the vehicles had already been loaded confers Longshore Act status). Booker performed this duty during the great majority of his tenure at Sea-Logix. This job duty was discontinued during Booker's last few months of work, but Sea-Logix cites no authority that this affects Booker's status.

6.      Because Booker has Longshore Act status based on his three job duties described above, we need not and do not decide whether he also has status

based on his transportation of cargo from the Maersk Terminal to other marine terminals within the Port of Oakland.

Accordingly, the petition for review is **DENIED**.