Raymond C. RAMOS, Petitioner,

v.

UNIVERSAL DREDGING CORPORATION, Industrial Indemnity Company, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

Nos. 79–7257, 79–7285 and 79–7302.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 24, 1981.

Decided Aug. 17, 1981.

Mark C. Walters, U.S. Dept. of Labor, Washington, D.C., argued, for petitioner; Benjamin L. Carroll, III, McKenzie, Trecker & Fritz, Honolulu, Hawaii, on brief.

John A. Roney, Stubenberg, Shegemura, Roney & Gniffke, Honolulu, Hawaii, for respondents.

Before KILKENNY, SNEED and FARRIS, Circuit Judges.

KILKENNY, Circuit Judge:

Ramos and the Director, Office of Workers' Compensation Programs, United States Department of Labor (Director) both petition for review of an order of the Benefits Review Board (Board) which vacated an award of an Administrative Law Judge (ALJ) under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA or Act), 33 U.S.C. § 901 *et seq.*, and remanded to dismiss for lack of subject matter jurisdiction.

## BACKGROUND

Ramos was employed by Universal Dredging Corporation (Universal) as a deck hand on the Dredge EXPLORER. The dredge was being used in connection with the construction of a reef runway of the Honolulu International Airport, which extended into Hickam Harbor and Keehi Lagoon. The dredge, located some distance from the shore, had no motor for transportation. Its function is to scoop soil, rock, coral, and other ocean floor material and pump the material through pipes to the levee. We can assume that Ramos' job duties included keeping the deck clean, checking the fuel level for the next shifts, inspecting the pipes for leaks, removing stones that might jam the machinery, and supplying general maintenance to the dredge.

Ramos was injured while working on the dredge in late September and early October, 1975. He filed claims for benefits under the Act and Universal voluntarily paid those claims for temporary total disability until August, 1977. At that time, the parties could not agree on continued compensation and the case was transferred to the ALJ for a formal hearing. Her decision, which can be termed both findings and conclusions, states, among other things, the following:

"The issues here under consideration are: (1) whether the Claimant was a 'member of the crew' of a vessel excluded from coverage at the time of his injury; and, (2) the nature and the extent of injury."

Her findings recite that the *dredge was in navigable waters*, that the *activity was maritime employment* and that the parties so agreed. She also found that the injuries occurred during and in the course of employment. Her decision and order filed July 10, 1979, found that Ramos was: (1) not a "member of the crew" of a vessel excluded from coverage; (2) permanently disabled, and (3) entitled to compensation. Ramos appealed the failure of the ALJ to award attorney fees and 10% additional compensation under 33 U.S.C. § 914(e). Universal appealed urging, among other things, that the ALJ erred in finding that

Ramos was not a member of the crew of the vessel. The Director filed a brief and presented oral argument in response to Universal's petition for review.

Later, in a two to one decision, the Board vacated the ALJ's award. The Board decided that issues presented by §§ 902(3) [whether plaintiff was an "employee"] and 903(a) [whether the injury occurred upon navigable waters] presented issues of subject matter jurisdiction, rather than issues of "coverage." These were issues that could not be waived and the Board was required to raise them on its own motion. It found that the claimant was not a "harbor worker" because the reef runway under construction was not a "harbor facility" and that Ramos was not engaged in "maritime employment" because his work did not have a "realistically significant relationship to navigation and commerce on navigable waters."

## ISSUE

We have concluded that the only issue necessary to be decided is whether the Board erred when it concluded that it did not have subject matter jurisdiction.

## DISCUSSION

The majority in the Board's decision makes it clear that it did not reach the merits, but concluded that it lacked subject matter jurisdiction. We quote from it:

"*We will not address the issues raised in these appeals as we have determined that, regardless of the disposition of the issue of claimant's status as a member of the crew, the award must be vacated for lack of subject matter jurisdiction. The record clearly reveals that claimant was not engaged in maritime employment under the Act.*" [Emphasis added.]

The decision concludes with the language:

"Accordingly, the award is vacated and the case is remanded to the Office of Administrative Law Judges with instructions to dismiss for lack of subject matter jurisdiction."

The 1972 Amendment under scrutiny, § 903(a) of the Act, reads:

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but *only* if the disability or death results from an injury occurring upon the *navigable waters* of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel).... (The portion in parentheses was added by the 1972 Amendments).

Section 902(3) of the amended Act describes the class of workers covered as follows:

"(3) The term 'employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net."

The portion underlined was added by the 1972 Amendments. An employer is defined to mean:

"The term 'employer' means an employer *any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States* (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)." § 902(4) of the Act.

The majority obviously *confused subject matter jurisdiction with personal coverage under the Act.* There is no question but that the injury to appellant occurred on navigable waters of the United States.

Although the Board disclaimed a consideration of the issues of fact raised before the ALJ, in fact it rather fully discussed the issues and arrived at the ultimate conclusion that since the claimant was not engaged in *maritime employment* under § 2(3), the case had to be dismissed for lack of subject matter jurisdiction.

## CONSTITUTIONALITY OF THE 1972 AMENDMENTS

Intertwined with the principal issue of subject matter jurisdiction is the constitutionality of the 1972 Amendments to the Act, as applied to the facts before us.

Before the 1972 Amendments, it was only necessary for an injured employee to satisfy a situs requirement, *i. e.* the injury had to have occurred upon the navigable waters of the United States. In *Northeast Marine Terminal Co., Inc. v. Caputo*, 432 U.S. 249, 264, 97 S.Ct. 2348, 2357, 53 L.Ed.2d 320 (1977), it was said:

"So long as a work-related injury occurred on navigable waters ... the worker would be eligible for federal compensation provided that his or her employer had at least one employee engaged in maritime employment. It was not necessary that the injured employee be so employed."

In the same case it is said:

"The 1972 Amendments thus changed what had been essentially only a 'situs' test of eligibility for compensation to one looking to both the '*situs*' of the injury and the '*status*' of the injured." *Id.* at 264–265, 97 S.Ct. at 2357. [Emphasis added.]

In the case before us, the Board's conclusions follow the argument presented by petitioner in *Brady-Hamilton Stevedore Co. v. Herron*, 568 F.2d 137, 141 (CA9 1978). There, the stevedore urged, in part, that the claimant was not engaged in maritime employment when he was injured and that, therefore, he had not met the status requirements of the 1972 legislation. It also

urged that the coverage of the claimant under the Act would exceed *the power of Congress under the Constitution.* The court, in passing on the question, said:

"Such contention is without merit. Congress has 'paramount power to determine the maritime law which shall prevail throughout the country,' *Detroit Trust Co. v. The Thomas Barlum*, 293 U.S. 21, 43, 55 S.Ct. 31, 38, 79 L.Ed. 176 (1934), including authority over maritime contracts. *Id.* at 48, [55 S.Ct. at 40]." *Id.* at 141.

The Board's theory in declining subject matter jurisdiction was that the Admiralty and Maritime Clause of the Constitution, Article III, Section 2, Cl. 1, did not confer power on Congress to extend the coverage to petitioner. This was the position taken by the shipyard in *Newport News Shipbuilding & Dry Dock v. Graham*, 573 F.2d 167, 170 (CA4 1978), *cert. denied*, 439 U.S. 979, 99 S.Ct. 563, 58 L.Ed.2d 649. There, the court said:

"... [W]e conclude that Congress acted constitutionally when it extended the Act's coverage to an employee maintaining machinery utilized to build ships in a shipyard adjoining navigable waters even though his shop was relatively distant from the shore." *Id.* at 170.

Arguments similar to respondents have been recently rejected by other courts. *Dravo Corp. v. Maxin*, 545 F.2d 374, 375–379 (CA3 1976), *cert. denied*, 433 U.S. 908, 97 S.Ct. 2973, 53 L.Ed.2d 1092 (1977); *Pittston Stevedoring Corp. v. Dellaventura*, 544 F.2d 35, 56–57 (CA2 1976), *aff'd sub nom. Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977), and *Sea-Land Service, Inc. v. Director*, 540 F.2d 629, 635–37 (CA3 1976). These cases hold that Congress acted constitutionally when it extended the Act's coverage in the manner in which it did under the 1972 Amendments.

## SUBJECT MATTER JURISDICTION

Prior to the decision of the majority in this case, the Board was committed to the

subject matter jurisdictional rules stated in the exhaustive opinion of Chief Judge Stephens in *West Coast Exploration Co. v. McKay*, 213 F.2d 582 (CADC1954), *cert. denied*, 347 U.S. 989, 74 S.Ct. 850, 98 L.Ed. 1123 [not an admiralty case], where the court, in substance, held that "jurisdiction of subject matter" is the power to adjudge concerning a general question involved and is not dependent upon the state of facts which may appear in a particular case, arising or which is claimed to have arisen, under that general question. It is the power to hear and determine causes of the class in which the particular controversy belongs, and is not limited to making correct decisions, but includes power to decide wrong as well as right.

Although the majority recognized that it had followed the general rules stated in *West Coast Exploration* in its prior decision of *Sablowski v. General Dynamics Corporation*, 5 B.R.B.S. 383, B.R.B. No. 76–127 (January 24, 1977), it here decided to reexamine the question. In *Sablowski*, the Board concluded that the administrative law judge had statutory authority to hear a claim, somewhat similar to the one before us. Here, the majority of the Board concluded that it had not gone far enough in *Sablowski* in its analysis of federal jurisdiction and decided that under Article III, Section 2 of the Constitution it did not have subject matter jurisdiction. In arriving at this conclusion, the Board, in fact, considered and decided whether appellant was engaged in "maritime employment" under the Act. In so doing, it did not reach the ultimate issue of whether the claimant was a "*member of a crew*" of a vessel. *South Chicago Coal & Dock Co. v. Bassett*, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940), is in point. In *Senko v. LaCrosse Dredging Corp.*, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957), the Supreme Court, in commenting on its decision in *Bassett*, said:

"[T]he determination of whether an injured person was a 'member of a crew' is to be left to the finder of fact meant that

juries have the same discretion they have in finding negligence or any other fact. The essence of this discretion is that a jury's decision is final if it has a reasonable basis, whether or not the appellate court agrees with the jury's estimate." *Id.* at 374, 77 S.Ct. at 417.

Needless to say, an issue of fact does not disappear by reason of a trial by the court, rather than by a jury.

In *Senko*, the claimant was employed in dredging operations. He was injured during the course of his employment while ashore and brought an action under the Jones Act. *His evidence tended to show he was employed almost solely on the dredge during its anchorage and for future trips.* There the Supreme Court held that the evidence was sufficient to support the jury's finding that petitioner was "a member of the crew" entitled to maintain the action under the Act, and that its finding was final whether or not the appellate court agreed with the jury's estimate.

Likewise, in this case, we hold that the petitioner's status as a "member of a crew" [a maritime employee] is a question of fact to be determined by the administrative law judge. That conclusion is dictated by the logic of *Senko*. Moreover, that issue was decided by implication in our circuit in *Weyerhaeuser Co. v. Gilmore*, 528 F.2d 957 (CA9 1975), *cert. denied*, 429 U.S. 868, 97 S.Ct. 179, 50 L.Ed.2d 148 (1976), in which the court upheld the determination of an administrative law judge that the claimant was *not engaged in maritime employment*, a prerequisite to eligibility under the Act.

Following the same line is *P. C. Pfeiffer Co., Inc. v. Ford*, 444 U.S. 69 100 S.Ct. 328, 62 L.Ed.2d 225 (1979). There, the Supreme Court held that the claimants were engaged in maritime employment at the time of their injuries because they were engaged in intermediate steps of moving cargo between ship and land transportation. It might well be argued that the movement of cargo between ship and land involved in *Pfeiffer* could be likened to the movement

of the material from the dredge to the airport runway. In *Pfeiffer* the Court accepted jurisdiction and held that persons moving cargo from a ship to land transportation were engaged in maritime employment and a worker responsible for some portion of that activity is as much an integral part of the process of loading or unloading a ship as a person who participates in the entire process. *Cargill, Inc. v. Powell*, 573 F.2d 561 (CA9 1977), was appealed to the Supreme Court of the United States where the decision of our circuit was vacated, *Powell v. Cargill, Inc.*, 444 U.S. 987, 100 S.Ct. 516, 62 L.Ed.2d 417 (1979), and remanded for reconsideration in the light of *Pfeiffer, supra*. There, our court exercised jurisdiction and on remand, *Cargill, Inc. v. Powell*, 625 F.2d 330 (CA9 1980), withdrew its previous opinion and affirmed the decision of the Benefits Review Board. There is no question but that the court in that case *exercised jurisdiction* in deciding whether the employee was engaged in *maritime employment.*

*Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), is not in conflict with our conclusion that the Board had subject matter jurisdiction. In *Executive Jet*, involving the fall of an airplane on navigable waters after collision over land with a flight of birds, the Court held that the district court did not have jurisdiction in admiralty for the reason that the alleged tort did not have a maritime nexus. Here, exactly the opposite is true. Here the accident actually occurred on navigable waters and had in the use of the dredge a maritime nexus. In *Executive Jet*, the Court held that, in the absence of legislation to the contrary, admiralty jurisdiction exists with respect to tort claims only where the case involves a significant relationship to traditional maritime activity. Certainly, the operation of a dredge has a significant relationship to traditional maritime activity. It is only in maritime activity that a dredge is used.

The record before us is almost identical to a situation where a person on a vessel with the same duties as petitioner's was transporting on navigable water airport runway material from one location to another, had put out its anchor, and was then unloading the material through a conveyor to construct the airport runway. No one could suggest that the law of admiralty did not cover such a situation.

In *Weyerhaeuser Co. v. Gilmore, supra*, the court accepted jurisdiction and decided that the claimant *was not* an "employee" and that his work in a sawmill's log pond was not "maritime employment" in the traditional sense. The case is solid authority for the view that the court had maritime jurisdiction to make such a decision. Needless to say, the operation of a log pond as an adjunct to a sawmill does not present as strong a case for jurisdiction as the operation of a dredge on navigable waters. The nature of the dredge's operations and of the petitioner's employment have traditionally been considered to be within the scope of admiralty jurisdiction. Dredges, like the EXPLORER, have been considered as "vessels" for Jones Act purposes, 7A J. Moore Federal Practice ¶ .215[4] (2d ed. 1979). Without even a suggestion that the scope of admiralty jurisdiction was being exceeded, the First Circuit in *Gahagan Const. Corp. v. Armao*, 165 F.2d 301 (CA1 1948), *cert. denied*, 333 U.S. 876, 68 S.Ct. 905, 92 L.Ed. 1152, where an employee was performing work on a dredge similar to that performed by petitioner had no difficulty in finding that the employee was a seaman.

Although this case may lie in that murky area where maritime activity blends into the nonmaritime, there is no question in our minds but that the Board had jurisdiction to decide the principal issue presented on review of the decision of the ALJ, *i. e.* was petitioner a seaman.

Finally, we emphasize what the Supreme Court has repeatedly stated, *i. e.* that the amendments to the Act should be liberally construed, both because the language "*engaged in maritime employment*" is *broad* and because the Act is *remedial* legislation. The Court in *Caputo* noted that this broad

language "suggests that we should take an expansive view of the extended coverage ... [, since] such a construction is appropriate for this remedial legislation." *Northeast Marine Terminal, supra*, 432 U.S. at 268, 97 S.Ct. at 2359. The fact that as an incident to its dredging operation, for which the vessel was built and traditionally used, it incidentally assisted in furnishing the material for building an airport runway does not by some judicial fiat transform the traditional function of the dredge and thus oust the jurisdiction of an admiralty court.

## SUMMATION

It is clear that the Benefits Review Board in overruling its *Sablowski* decision was troubled by the manner in which it previously construed § 903(a), as implemented by § 902(3), to deal with *coverage*, rather than jurisdiction. This, it reasoned, permitted the parties to agree upon a "coverage" which might extend beyond the constitutional limits of the admiralty power. In its present approach, the Board would make §§ 903(a) and 902(3) jurisdictional in all respects. In utilizing this approach, it has gone far beyond the Congressional intent. For example, an injury may have a sufficient connection with traditional maritime activity (an offshore oil spill) to be well within the reach of admiralty jurisdiction, but not an injury covered by §§ 903(a) and 902(3). In that posture, the issue is purely one of coverage. The same can be said of the factual background before us. In other words, because the present injury occurred well to the seaward side of the line initially drawn in *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), the only issue is one of coverage. For a discussion of *Jensen see Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980).

By so holding, we do not mean to say that an employer and an employee should be able to stipulate that the tort occurred at a situs embodied in § 903(a) and that the employee is engaged in "maritime employment" within the meaning of § 902(3), when in fact the injury was suffered some fifteen or twenty miles inland and the employee was a bookkeeper for his stevedore employer. In this situation, a subject matter jurisdictional issue would be presented even though the parties might desire to contest only whether a disability existed. In such situations, the Board would have power to inquire into its jurisdiction to proceed. For other examples, *see Executive Jet, supra*, and *Weyerhaeuser Co. v. Gilmore, supra*.

## OTHER ISSUES

In the light of our decision on subject matter jurisdiction, it would be improvident for us to pass on other issues argued in the petition on appeal, including, but not limited to, the question of the standing of the Director to appeal.

## CONCLUSION

Expressing no view on the merits, we conclude that the Board was clearly in error in holding that it and the ALJ lacked subject matter jurisdiction. Consequently, its decision must be vacated and the cause remanded for a decision on the merits of the appeals, including the effect of the agreement between the parties and the force of the ALJ's findings, or remand to the ALJ for a supplemental hearing, if necessary.

**REVERSED AND REMANDED.**