673 F.2d 1097
 Earl PERKINS, Petitioner,
v.
MARINE TERMINALS CORPORATION, and Pacific Employers
Insurance Co., Respondents.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Department of Labor, Petitioner,
v.
MARINE TERMINALS CORPORATION, and Pacific Employers
Insurance Co., Respondents.
 Nos. 80-7220, 80-7241.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 12, 1981.
Decided April 8, 1982.
 
 Kathryn E. Ringgold, San Francisco, Cal., Joshua T. Gillelan, Washington, D. C., argued, for petitioner; Airola & Ringgold, San Francisco, Cal., on brief.
 Albert H. Sennett, San Francisco, Cal., for respondents.
 On Petition for Review of an Order of the Benefits Review Board.
 Before SKOPIL and BOOCHEVER, Circuit Judges, and BILBY,* District Judge.
 BOOCHEVER, Circuit Judge:
 
 
 1
 The claimant, Earl Perkins, and the Director of the Office of Workers' Compensation Programs ("Director") petition for review of an order of the Benefits Review Board ("Board") that vacated a compensation award by an Administrative Law Judge ("ALJ") under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA" or "Act"), 33 U.S.C. §§ 901 et seq., and remanded to dismiss for lack of subject matter jurisdiction. We conclude that the Board erred in characterizing the question of maritime situs as jurisdictional, and in overturning the ALJ's determination that Perkins was injured in the course of his employment. We further conclude that the issue of whether Perkins gave his employer timely notice of his claim is not properly before us because the Board failed to address it. Accordingly, we grant the petition for review, reverse the Board's decision, and remand for further proceedings on the notice issue.
 
 
 2
 * Background
 
 
 3
 Perkins was injured in an automobile accident on February 16, 1977, while driving his personal vehicle home after his work for Marine Terminals Corporation ("Marine"). On the day of the accident, Marine, a contract stevedore, was performing work for the Military Ocean Transport Bay Area ("MOTBA") at the Oakland Army Base in Oakland, California. Marine employed Perkins as a longshoreman.
 
 
 4
 The accident occurred within the Army Base's perimeter fence, but approximately 1,700 feet landward of the controlled access gate to the MOTBA docks where Perkins and the rest of Marine's longshoremen were working that day. Perkins had been dispatched to the MOTBA job site by the International Longshoremen's and Harbor Workers' Union from the central hiring hall in San Francisco.
 
 
 5
 Perkins was covered by the Pacific Coast Longshore Contract which provided one-half hour travel time at straight pay to longshoremen dispatched from San Francisco to work in Oakland. Marine provided free round-trip bus service between the hiring hall and Oakland Army Base, but its employees were not required to ride the bus. Employees dispatched from San Francisco received the same half-hour travel time regardless of whether they rode Marine's bus or arranged their own transportation.
 
 
 6
 The ALJ found that because of the travel-time payment Perkins' injury occurred in the course of his employment within the meaning of section 2(2) of the Act, 33 U.S.C. § 902(2), and awarded temporary total disability and permanent partial disability. The ALJ also found that Perkins gave Marine timely notice of his claim as required by section 12(a) of the Act, 33 U.S.C. § 912(a). Marine did not contend that the Act's maritime situs requirement was not met, and the ALJ did not address the question.
 
 
 7
 On Marine's appeal, the Board, following its decision in Ramos v. Universal Dredging Corp., 10 BRBS 368 (1979) (rev'd, 653 F.2d 1353 (9th Cir. 1981) ), held that whether an injury has a maritime situs goes to subject matter jurisdiction. As such, the Board reasoned that maritime situs issues may be raised at any stage of the proceedings and the Board was therefore obligated to raise it on its own motion. The Board held that subject matter jurisdiction was lacking in this case because the site of the accident was not connected with maritime activity.
 
 
 8
 As an alternative basis for its decision, the Board held that even if there were jurisdiction, Perkins' injury did not occur in the course of his employment as required for coverage by section 2(2) of the Act. The Board reasoned that the union contract provided compensation only for transportation to work, not from work, and that none of the exceptions to the going-and-coming rule applied. The Board did not decide whether the notice given by Perkins was timely.
 
 II
 Admiralty Jurisdiction
 
 9
 Consistent with our recent decision in Ramos v. Universal Dredging Corp., 653 F.2d 1353 (9th Cir. 1981), we hold that the question of situs in this case goes only to coverage, not subject matter jurisdiction, and that the Board was therefore without authority to raise and decide it sua sponte. Because Marine neither raised the issue of situs before the ALJ nor appealed the ALJ's determination of coverage to the Board, except with regard to the limited course-of-employment issue, the right to contest coverage on situs grounds was waived.
 
 
 10
 An injured employee cannot be compensated under the Act, as amended in 1972, without satisfying certain maritime situs and status requirements. See P. C. Pfeiffer Co. v. Ford, 444 U.S. 69, 78, 100 S.Ct. 328, 335, 62 L.Ed.2d 225 (1979). To satisfy the situs requirement, the injury must occur "upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)." 33 U.S.C. § 903(a). To meet the status requirement, the employee must be "engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker...." 33 U.S.C. § 902(3).
 
 
 11
 In Ramos, the Board reversed its prior decision in Sablowski v. General Dynamics Corp., 5 BRBS 383 (1977), and held that questions of situs and status go to subject matter jurisdiction. The Board reasoned that the Act's coverage requirements not only limit recoveries under the statute, but also define the extent of admiralty jurisdiction under Article III. Ramos, 10 BRBS at 371-72.
 
 
 12
 This court rejected the Board's reasoning, holding that "an injury may have a sufficient connection with traditional maritime activity (an offshore oil spill) to be well within the reach of admiralty jurisdiction, but not (be) (sic) an injury covered by §§ 903(a) and 902(3). In that posture, the issue is purely one of coverage." Ramos, 653 F.2d at 1359. Lack of coverage is not synonymous with lack of jurisdiction. In some cases, however, the connection with maritime activity may be so remote that "a subject matter jurisdictional issue would be presented even though the parties might desire to contest only whether a disability existed (such as where a stevedore's bookkeeper is injured twenty miles from navigable water). In such situations, the Board would have power to inquire into its jurisdiction to proceed." Id.
 
 
 13
 The touchstone in determining whether admiralty jurisdiction exists is whether the case "involves a significant relationship to traditional maritime activity." Id. at 1358, discussing Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Although, as in Ramos, "this case may lie in that murky area where maritime activity blends into the nonmaritime, there is no question in our minds but that the Board had jurisdiction...." Id.
 
 
 14
 It is undisputed that Perkins was engaged in maritime employment for purposes of the status test set forth in 33 U.S.C. § 902(3).[1] We believe that this factor alone constitutes a sufficient nexus to traditional maritime activity to create admiralty jurisdiction in this case. "It is the existence of the special employer-employee relationship, and not the situs of that relationship, that is significant for purposes of admiralty jurisdiction." Sea-Land Service, Inc. v. Director, Office of Workers' Compensation Programs, 540 F.2d 629, 636 (3d Cir. 1976). See also Brady-Hamilton Stevedore Co. v. Herron, 568 F.2d 137, 141 (9th Cir. 1978).
 
 
 15
 The pertinent focus in determining the limits of admiralty jurisdiction centers on the employee's functional, rather than spatial, nexus to traditional maritime activities. Although there may be situations where injuries to maritime employees occur so far from navigable water that situs considerations alone would pose jurisdictional questions (but see Sea-Land, 540 F.2d at 638), this is not such a case. Perkins' situation is clearly distinguishable from the hypothetical case posed in Ramos, 653 F.2d at 1359, about the bookkeeper injured twenty miles from navigable water. The fact that one of the Board members argued in dissent that the site where Perkins was injured was an "adjoining area" under 33 U.S.C. § 903(a) indicates, if nothing else, the relative closeness of the situs issue in this case. As the Board noted in Lasky v. Todd Shipyards Corp., 8 BRBS 263, 265 (1978):
 
 
 16
 (T)he fact that an injury occur(s) outside the physical boundaries of the shipyard should not in and of itself be considered dispositive of the issue whether claimant was covered at the time of his injury. It would appear that in certain instances (the) situs requirement should be read to include persons injured on their way to work, for example a situation where an employee was hired from a central hiring hall.
 
 
 17
 Accord, Stockman v. John T. Clark & Son of Boston, Inc., 539 F.2d 264 (1st Cir. 1976), cert. denied, 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1092 (1977); Brown v. Reynolds Shipyard, 9 BRBS 614 (1979); Nalej v. H. W. Ramberg Inc., 8 BRBS 640 (1978). There is no requirement in the Act that a facility or area be used exclusively, or even primarily, for maritime purposes for it to be a covered situs, Newport News Shipbuilding & Dry Dock Co. v. Graham, 573 F.2d 167, 169 (4th Cir.), cert. denied, 439 U.S. 979, 99 S.Ct. 563, 58 L.Ed.2d 649 (1978); Dravo Corp. v. Banks, 567 F.2d 593, 595 (3d Cir. 1977), or that it be within a specified distance to the shore. See, e.g., Alford v. American Bridge Division, United States Steel Corp., 642 F.2d 807, 813-16 (5th Cir. 1981) (amended on other grounds, 655 F.2d 86), cert. applied for, 50 U.S.L.W. 3559 (1982); Brady-Hamilton Stevedore Co. v. Herron, 568 F.2d 137 (9th Cir. 1978) (locker area located 2600 feet from shore and 2050 feet outside the entrance gate to port facility held to be a covered situs). Given Perkins' undisputed status as a maritime employee and the closeness of the situs issue (which we need not resolve here), the case clearly presented a sufficient nexus with traditional maritime activities to vest the Board with subject matter jurisdiction to address the issues raised by Marine on appeal.
 
 III
 Course of Employment
 
 18
 The Act affords coverage only for injuries "arising out of and in the course of employment." 33 U.S.C. § 902(2). Under this course-of-employment requirement, found in almost all workers' compensation schemes, injuries sustained by employees while going to or coming from work are generally not compensable. See generally 1 Larson, Workmen's Compensation Law, § 16.00 (1978). The Board specifically adopted this doctrine-commonly termed the "coming-and-going" rule-for use in L.H.W.C. Act cases in Owens v. Family and Home Services, Inc., 2 BRBS 240 (1975). The Board noted in Lasky v. Todd Shipyards Corp., 8 BRBS at 265 that the coming-and-going rule does not preclude L.H.W.C. Act coverage where: (1) the employee is paid for the trip to and from work; (2) the employer controls the journey; or (3) the employee is on a special errand for the employer.
 
 
 19
 The issue before us is whether the first of the three exceptions discussed in Lasky-the "trip-payment" exception-applies to Perkins' situation.[2] The trip-payment exception has been described by the District of Columbia Circuit as follows:
 
 
 20
 To establish this trip-payment exception, pay must be specifically identified as related to the trip or to the time spent going to the job site. The prescription for compensability under this statute is 'arising out of and in the course of employment'. While the statute is broad and liberal in its application, its benefits are definitely derived from employment. Usually the trip between home and work lacks all the characteristics of employment (time, place, pay, and employer control), but if there is pay for the trip this thin link is deemed sufficient to bring the trip within the boundary of employment and thus of accident compensability.
 
 
 21
 Foster v. Massey, 407 F.2d 343, 345-46 (D.C.Cir.1968).
 
 
 22
 Although this description is accurate as far as it goes, it does not reflect that there are two variations of the trip-payment exception-the "payment for time of travel" and "payment for expense of travel" variations. The distinction between these variations is discussed in Larson, supra, §§ 16.20 and 16.30, at 4-153 to 4-179. See also Cardillo, 330 U.S. at 482-83, 67 S.Ct. at 809.
 
 
 23
 The first variation applies "(w)hen the employee is paid an identifiable amount as compensation for time spent in a going or coming trip." Larson, supra, at 4-153. As Larson notes, one of the most common situations in which this variation arises is where, as in Perkins' situation, "the work is to be performed at some rather remote place, and in order to induce men to work at that distance from their home, it is necessary to pay them for the time consumed by travel." Id., at 4-157 (discussing Kobe v. Industrial Accident Commission, 35 Cal.2d 33, 215 P.2d 736 (1950) ).
 
 
 24
 The second variation, payment for expense of travel, arises when the employer pays or reimburses the employee for travel expenses. Larson notes that courts have been somewhat more resistant to the travel-expenses variation and have usually upheld it as a valid exception only where the payment has been clearly designated as travel reimbursement-not merely an added form of compensation-and where the payment has been "substantial." Id. at 4-159, 4-175. Larson notes that the fact that transportation expenses are actually held out as an inducement to accept employment is a material factor supporting compensability. Id. at 4-173. Thus, the fact that the payment for travel is offered as an inducement for the employee to accept the job is significant under either variation.
 
 
 25
 Even where the travel payments are small and the commuting distance short, compensation is appropriate under either variation when the parties have singled travel out for separate agreement because of special circumstances. Id. at 4-172. The Supreme Court has noted in a similar vein that a union contract is highly relevant in identifying pay with the trip. Cardillo, 330 U.S. at 483, 67 S.Ct. at 809. Rule 11 of the union contract in force on February 16, 1977, the date of Perkins' injury, provides that:
 
 
 26
 There shall be no travel time paid men or gangs dispatched from San Francisco Hall to points within the City and County of San Francisco. When men are ordered to report for work at points in Oakland, Oakland Inner Harbor or Alameda it shall be the option of the Employer to furnish transportation or to order men without designating any specific method of transportation. When transportation by bus or launch is provided by the Employer, the men shall receive travel time from the time they leave San Francisco to the time they arrive at the job, with a minimum of one-half ( 1/2) hour. When transportation is not furnished by the Employer, and men report for work at the time and place as ordered, each man shall receive in lieu of all travel and transportation expense 45 minutes allowance at basic straight time rate plus round-trip fare of A-C Transit.[3] (emphasis added)
 
 
 27
 According to the contract, an Oakland employer can satisfy its travel obligations to San Francisco employees in either of two ways: it can convey the employees to and from work by bus or boat and pay them salary for thirty minutes of travel time; or, alternatively, it can let the employees arrange their own transportation to and from work and pay them forty-five minutes of salary plus round-trip bus fare.[4]
 
 
 28
 Marine provided round-trip bus service to and from Oakland. It is uncontroverted that those employees like Perkins who arranged their own transportation to and from work were paid one-half hour of travel time, the same as employees who rode Marine's bus. There was uncontradicted testimony that the free bus transportation and payment for time of travel were inducements to get employees to work in Oakland. The payment of thirty-minutes of travel time roughly covered the time Perkins spent commuting round-trip.
 
 
 29
 After reviewing the contract and the parties' practice, the ALJ concluded that the case fell within the trip-payment exception to the coming-and-going rule. The ALJ rejected Marine's contention that only trips to Oakland were in the course of employment:
 
 
 30
 To restrict 'course of employment' to a trip 'to' Oakland and remove a trip 'from' Oakland from compensability is not within the intent or purview of a liberal construction of the Act.
 
 
 31
 As alluded to by the ALJ in the above-quoted sentence, the Act must be construed liberally in favor of coverage to effectuate its broad, remedial purpose. Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 268, 97 S.Ct. 2348, 2359, 53 L.Ed.2d 320 (1977). Accord, Holcomb v. Robert W. Kirk & Associates, Inc., 655 F.2d 589, 592 (5th Cir. 1981); Ramos, 653 F.2d at 1358-59. Indeed, the Act provides that it is presumed, in the absence of substantial evidence to the contrary, that an injury is covered. 33 U.S.C. § 920(a).
 
 
 32
 The Benefits Review Board is bound by the ALJ's findings if they are supported by substantial evidence in the record considered as a whole, and may not review the evidence de novo nor substitute its views of the evidence for those of the ALJ. 33 U.S.C. § 921(b)(3); Cardillo, 330 U.S. at 477-78, 67 S.Ct. at 806. Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs, 629 F.2d 1327, 1329 (9th Cir. 1980); Cordero v. Triple A Machine Shop, 580 F.2d 1331, 1333 (9th Cir. 1978), cert. denied, 440 U.S. 911, 99 S.Ct. 1223, 59 L.Ed.2d 459 (1979). This court must accept the Board's decision only if it appears reasonable and reflects the Board's adherence to its limited standard of review and the remedial purposes of the Act. Ramos, 653 F.2d at 1358-59; National Steel & Shipbuilding Co. v. United States Department of Labor, 606 F.2d 875, 880 (9th Cir. 1979). See also Duncanson-Harrelson Co. v. Director, Office of Workers' Compensation Programs, 644 F.2d 827, 830 (9th Cir. 1981). This court undertakes a more searching review of the Board's decision where, as in this case, it is opposed by the Director. Director, Office of Workers' Compensation Programs v. Robertson, 625 F.2d 873, 876 (9th Cir. 1980).
 
 
 33
 In light of the well-settled rules pertaining to the trip-payment exception and the standards of review applicable to this case, we conclude that the Board erred in reversing the ALJ on this issue. It is uncontroverted that the payment for time of travel was offered as an inducement to get longshoremen to work in Oakland. The fact that Marine was obligated under the union contract to pay travel time is also strong evidence favoring coverage. See Larson, supra, at 4-172; Cardillo, 330 U.S. at 483, 67 S.Ct. at 809. Marine offered no evidence that there was anything special about the trip to Oakland as opposed to the return trip. The travel payments were clearly an inducement to get employees to work in Oakland despite the expense and inconvenience of commuting round-trip from San Francisco. Marine's argument is further undercut by the fact that the travel payments roughly corresponded to the actual round-trip travel time involved and by the fact that Marine provided round-trip bus service for those who chose not to drive their own vehicles. Finally, Marine and the Board are mistaken in their belief that the lack of employer control over Perkins at the time of the accident precludes coverage. See Cardillo, 330 U.S. at 480-81, 67 S.Ct. at 807-08. The element of employer control is not relevant to the payment-for-travel exception.IV
 
 Notice of Claim
 
 34
 Marine has contended throughout these proceedings that Perkins failed to comply with the requirement in 33 U.S.C. § 912 that a claimant must give notice within thirty days of the injury or the date on which he became aware, or should have been aware, of the relationship between the injury and his employment. The ALJ rejected Marine's argument, but the Board, because of its disposition of the other issues, declined to review the ALJ's determination.[5] Given the disputed nature of the facts underlying this issue and the review procedure outlined in 33 U.S.C. § 921(c), we decline to reach this issue without benefit of the Board's prior reasoning. See generally Ramos, 653 F.2d at 1359; Hillcone S.S. Co. v. Steffen, 136 F.2d 965, 967 (9th Cir. 1943).
 
 
 35
 Accordingly, we grant the petition for review, reverse the Board on the issues of subject matter jurisdiction and coverage, and remand for further proceedings on the question of timely notice.
 
 
 
 *
 Honorable Richard M. Bilby, United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 It is also undisputed that Marine is an employer within the meaning of 33 U.S.C. § 902(4)
 
 
 [2]
 This issue seldom arises in the context of L.H.W.C. Act cases because it is unlikely that the site of an accident in which a longshoreman or harbor worker is injured while commuting to or from work will qualify as a "maritime situs" under the Act, as defined in 33 U.S.C. § 903(a), or that, as here, the situs issue will be waived. The issue has arisen in the District of Columbia, however, because Section 1 of the District of Columbia Workmen's Compensation Act (D.C.Code § 36-501 (1973) ) expressly incorporates the L.H.W.C. Act as the controlling law for all worker's compensation claims in that jurisdiction. It is apparent from the handful of District of Columbia cases that have examined the coming-and-going rule's application that where, as here, situs is not in issue, the rule and its exceptions apply to L.H.W.C. Act cases in the same manner as in any other worker's compensation case. Compare Cardillo v. Liberty Mutual Insurance Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947) and United States Fidelity and Guaranty Co. v. Donovan, 221 F.2d 515 (D.C.Cir.1954) (both holding that substantial evidence supported ALJ's finding that payment-for-travel exception precluded application of going-and-coming rule in determining whether injuries occurred in the course of employment under L.H.W.C. Act) with 1 Larson, Workmen's Compensation Law, § 16.20 at 4-153 (1978) (payment for time of travel) and § 16.30 at 4-158 (payment for expense of travel); 1A Benedict On Admiralty, § 45 at 3-7 (7th ed. 1981) (coming-and-going rule). Cf. Director, Office of Workers' Compensation Programs v. Brandt Airflex Corp., 645 F.2d 1053, 1056 (D.C.Cir.1981) ("special dangers" exception to coming-and-going rule applicable under L.H.W.C. Act)
 
 
 [3]
 Rule 9 of the union contract contains a similar, but less specific provision regarding travel:
 When transportation by bus or launch is furnished by the employer from the San Francisco Hall, the men shall receive travel time to any points within the cities of Oakland and Alameda; one-half hour minimum.
 
 
 [4]
 If, Perkins' situation had been within the second alternative, his case would be even stronger. Under the second alternative, there is no indication that the forty-five minutes of travel time was for any thing other than round-trip commuting time, a fact corroborated by the round-trip bus fare included as additional payment under the alternative
 
 
 [5]
 The dissenting Board member notes that he would affirm the ALJ's finding of timely notice